[Crim. No. 33712. Second Dist., Div. Four. July 26, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFONSO MAGANA et al., Defendants and Appellants.

Richard Fusilier and John H. Marshall for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General,

Norman H. Sokolow, John R. Gorey and Linda C. Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON (Bernard), J.**—Defendants Alfonso Magana and Abel Magana appeal from their convictions of the crimes of possession of narcotics for purposes of sale. Defendant Abel was convicted of the offense of possession of heroin for sale in violation of Health and Safety Code section 11351, subdivision (a). Defendant Alfonso was convicted of the offense of possession of cocaine for sale in violation of Health and Safety Code section 11351, subdivision (a). These convictions resulted from a trial growing out of a seven-count information. The charge against Abel was set forth in count III and the charge against Alfonso was set forth in count V. The other five counts of the information charged offenses against other defendants.[1]

The cocaine which formed the basis of the charge against Alfonso was secured from the latter's residence pursuant to a search warrant. The heroin which formed the basis of the charge against Abel was secured from the latter's place of business as a result of a search warrant. Defendants made motions to quash and traverse the search warrants. These motions were denied. Defendant Alfonso's motion to set aside the information, made pursuant to Penal Code section 995, was denied. Defendants' motions to suppress evidence, made pursuant to Penal Code section 1538.5, were denied. Defendant Alfonso's motion for severance of the trial was denied.

Thereafter, defendants waived their right to trial by jury and the case was submitted on the testimony contained in the transcript of the preliminary examination, together with exhibits introduced in evidence at the preliminary examination. A part of this testimony consisted of the

---

[1]In count I of the information, Charles Manuel Vivero and Jessie A. Medrano were charged with the sale of cocaine in violation of Health and Safety Code section 11352, subdivision (a). In counts II and VI of the information, Vivero was charged separately with a violation of Health and Safety Code section 11352, subdivision (a). In count IV, Vivero was charged with the offense of possession of cocaine for sale in violation of Health and Safety Code section 11351, subdivision (a). In count VII, Medrano and Vivero were charged with conspiracy (Pen. Code, § 182) to commit the crime of sale of heroin as proscribed by Health and Safety Code section 11352, subdivision (a). Effective July 1, 1977, sections 11351 and 11352 were amended in part to delete the subdivision designations. (Stats. 1976, ch. 1139, §§ 66, 67, p. 5079.)

testimony of a police officer, an expert in the field of narcotics, who expressed an opinion that the cocaine and heroin were possessed for purposes of sale. Although each side reserved the right to offer additional evidence, no additional evidence was offered either by the prosecution or the defendants. Both defendants were found guilty as charged. Each defendant was sentenced to state prison for the middle term of three years.

## I

### The Evidence Obtained From the Search of the Two Premises

On November 4, 1977, at approximately 8:30 a.m., police officers, armed with a search warrant, arrived at a residence located at 508 East 5th Street in the City of Azusa. A short time later, defendant Alfonso was observed walking around inside the yard of the premises. At approximately 10:30 a.m., Alfonso left the residence, entered an automobile and drove off. The officers then approached the residence, identified themselves to Mrs. Alfonso Magana and entered the residence to execute the search warrant. The police found, concealed in a light fixture above the bar in the master bedroom of the home, a plastic baggie containing 14.25 grams of cocaine, a plastic baggie containing 10.5 grams of a cutting agent, used to cut or increase the quantity of cocaine, and $2,000 in cash in a small shoebox. The police also found on the premises an assortment of personal papers bearing the name of defendant Alfonso and his wife, Elodia, with the address of 508 East 5th Street on the papers.

The heroin which formed the subject of the charge against defendant Abel was obtained from a search of premises located at 5908 Whittier Boulevard, which was the location of defendant Abel's place of business known as the M & S Screen Company. The search of this business location was made pursuant to a search warrant.

## II

### Summary of Contentions

The sole contention made by defendant Abel is that the affidavit in support of the search warrant, directed to his business premises, was legally insufficient to support the issuance of the search warrant.

Defendant Abel advances no contention with respect to the sufficiency of the evidence to sustain his conviction.

Defendant Alfonso advances the following contentions to support his argument for a reversal of the judgment: (1) that the motion to suppress evidence should have been granted because of insufficiency of the affidavit to support the search warrant for the 5th Street premises; (2) that the evidence was insufficient to sustain his conviction for possession of cocaine, irrespective of the question of the purpose of possession; (3) that the evidence was insufficient to support a conviction of possession of cocaine for purposes of sale; and (4) that the trial court erred in denying his motion for severance of the trial.

### III

*Sufficiency of the Affidavit Supporting*
*the Search Warrants*

A. *In General—the Necessity for Competent Evidence in an Affidavit*

■ If the affidavit which formed the basis for the issuance of the two search warrants was legally insufficient, defendants' motions to quash and traverse the search warrants, and their motions to suppress the evidence, secured as a result of the search of the two premises involved, should have been granted. In addition to the two premises involving the two defendants before us, search warrants were also issued for other premises involving other persons charged in the seven-count information.[2] One affidavit—that of Police Officer William Huffman—was used to support the various search warrants that were issued. The affidavit supporting the search warrants was a long one—in excess of 50 pages.

The basic attack which defendants make upon the affidavit supporting the search warrants is to the effect that the information contained therein came from various untested informants without sufficient supporting corroboration of the reliability of the information to constitutionally support the issuance of the search warrants.

We start our analysis by taking account of the Fourth Amendment to the United States Constitution, which provides, in pertinent part for our purposes, that ". . . no warrants shall issue, but *upon probable cause,* supported by oath or affirmation, and particularly describing the place to

[2]See footnote 1, *ante.*

be searched, and the persons or things to be seized." (Italics added.) Because of the Fourteenth Amendment to the United States Constitution, the fundamental rights of the Fourth Amendment are guaranteed against invasion by the states. (*Ker* v. *California* (1963) 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623].)

The controlling principle for determining what constitutes probable cause for the issuance of a search warrant within the meaning of the Fourth Amendment is set forth in *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]. Quoting from *Aguilar,* the California Supreme Court in *Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 149-150 [81 Cal.Rptr. 613, 460 P.2d 485], observed: " 'An evaluation of the constitutionality of a search warrant should begin with the rule that "the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of officers . . . who may happen to make arrests." ' Thus when a search is based on a warrant (and therefore on a magistrate's rather than a police officer's determination of probable cause) the reviewing courts 'will accept evidence of a less "judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant." . . . [citation] and will sustain the judicial determination so long as "there was substantial basis for [the magistrate] to conclude . . ." ' that the contraband was probably present."

If a search warrant is to satisfy the constitutional requirement of probable cause, the affidavit upon which the search warrant is based must contain "competent evidence" that is sufficient to support the magistrate's finding of probable cause. "A search warrant is issued without probable cause, and therefore in violation of constitutional proscriptions, when the affidavit upon which it is based contains no competent evidence sufficient to support the finding of the magistrate." (*People* v. *Scoma* (1969) 71 Cal.2d 332, 336 [78 Cal.Rptr. 491, 455 P.2d 419].)

The crucial question concerns what constitutes "competent evidence" for the purpose of determining probable cause. It must be recognized that the *affidavit* which is proffered to support the issuance of a search warrant is itself *hearsay evidence,* since it is offered for the truth of what it asserts insofar as the affiant's personal knowledge of facts asserted is concerned. Penal Code sections 1525, 1527 and 1528 create an *exception* to the hearsay rule for such an affidavit. But when the affiant sets forth the statements of *informers* and *other persons* as a basis for the affiant's belief

that contraband is located on the premises to be searched, we deal with the dangers involved in *double hearsay.*

### B. *An Affiant's Use of an Informant's Statement in the Affidavit—Non-hearsay*

It is the presence of *double* hearsay in an affidavit proffered to support issuance of a search warrant, with the consequent danger of unreliability—that has prompted the development of the rules of law for testing the sufficiency of an affidavit. One established rule sets forth the test for determining the sufficiency of an affidavit in terms of "whether the facts contained in the affidavit are such as would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion of the guilt of the accused." (*Skelton, supra,* 1 Cal.3d 144, 150.) It has also been decided that "[w]hile it is clear that probable cause does not require as strong evidence as is needed to convict [citation], the exact quantum of evidence which will constitute probable cause must be judged in light of the facts and circumstances of each case." (*Id.,* at p. 150.) This latter principle is enunciated in terms of appellate review in the following language: "The rules of appellate review recognize the impracticability of establishing a precise calculus by which the existence of probable cause is to be determined: the warrant can be upset only if the affidavit fails as a matter of law to set forth sufficient *competent evidence* supportive of the magistrate's finding of probable cause, since it is the function of the trier of fact, not the reviewing court, to appraise and weigh evidence when presented by affidavit as well as when presented by oral testimony." (*Id.,* at p. 150.) (Italics added.)

In order to define conditions of reliability in view of the hearsay dangers inherent in an affidavit which sets forth statements of informers and others upon which the affiant relies, the *Aguilar* court established a two-pronged test for the determination of what constitutes reliance constitutionally, by a magistrate upon the hearsay assertions of such informers and third persons that are set forth in an affidavit which provides the basis for the issuance of a search warrant.

The California Supreme Court has restated the *Aguilar* test as follows: " '[F]or an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the

matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable.' " (*People* v. *Smith* (1976) 17 Cal.3d 845, 850 [132 Cal.Rptr. 397, 553 P.2d 557].)

It should be understood that the California Supreme Court is using the phrase, "an informant's hearsay statement," in a somewhat loose fashion. For purposes of accuracy, the phrase "hearsay statement," should be limited to the situation in which a declarant's statement is being offered to prove the truth of the facts asserted in such statement. (Evid. Code, § 1200, subd. (a).)[3] It is abundantly clear that the informant's statements to the affiant, set forth in the affidavit, are *not* actually being offered to prove the truth of such statements. If they were, we would need an exception to the hearsay rule to justify such use of the statements. (Evid. Code, § 1200, subd. (b).)[4] No such exception to the hearsay rule for this double hearsay has been created either by statute or by decisional law. Rather, such statements are being offered to establish that the affiant had a reasonable basis for *believing* the informer's statement to be true— whether in fact true or not—to justify the magistrate's finding of probable cause. (*People* v. *King* (1956) 140 Cal.App.2d 1 [294 P.2d 972].) The language, "an informant's hearsay statement," should be discarded and a phrase such as "an informant-declarant's statement" should be used instead.

The defendants assert that neither prong of the *Aguilar* test is satisfied in the instant case. We reject this assertion. A review of the affidavit of Officer Huffman establishes that the affidavit sets forth the various informers' statements in language that is factual—rather than conclusionary—and establishes that the informers spoke from personal knowledge of the matters stated to the affiant.

The more serious question to be considered is whether the second prong of the *Aguilar* test is met. We recognize that the instant case is one in which information received by the affiant police officer was supplied by several untested informants and that the one tested informant did not supply information which would justify the affiant police officer in

[3]Evidence Code section 1200, subdivision (a), sets forth the definition of hearsay evidence as follows: " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."

[4]Evidence Code section 1200, subdivision (b), provides: "Except as provided by law, hearsay evidence is inadmissible."

considering that there was reasonable cause for the issuance of a search warrant directed to the respective premises of these two defendants. Under the second prong of *Aguilar,* it is clear that "[a]lthough the information which the officers received from their untested informants justify further investigation, that information standing alone was not sufficient to constitute reasonable cause for an arrest or search." (*People* v. *Fein* (1971) 4 Cal.3d 747, 752 [94 Cal.Rptr. 607, 484 P.2d 583].) However, "information given by an untested informant may be sufficient if corroborated in essential respects by other facts, sources or circumstances." (*Fein, supra,* 4 Cal.3d 747, 752; *People* v. *Lara* (1967) 67 Cal.2d 365, 374-375 [62 Cal.Rptr. 586, 432 P.2d 202].)

The rule of corroboration is further refined by the principle that "in order for corroboration to be adequate, it must pertain to defendant's alleged *criminal* activity; accuracy of information regarding the suspect generally is insufficient." (*Fein, supra,* 4 Cal.3d 747, 753.) (Italics in original.)

Defendants contend that the only corroboration of the information obtained from the untested informers presented by the affidavit is simply corroboration of the information regarding the defendants in *noncriminal* aspects and that the People are necessarily relying on what defendants characterize as an unacceptable principle that the statements of one untested informant may be used to corroborate the statement of another untested informant.

We reject this contention because it assumes a false premise. Our review of the affidavit on which the magistrate relied in issuing the search warrants establishes that the information supplied by the untested informants actually was sufficiently corroborated by information coming from other police officers who spoke of their own knowledge of the criminal activities of defendants.

The corroborating information given to the affiant Police Officer Huffman came from other police officers over a period of several months. These officers had conducted surveillances of the movements of both defendants and the movements of codefendants charged in the seven-count information. This corroborating information tended to establish that the two defendants before us were engaged in narcotic sales with narcotics being stashed at a number of locations, including the two premises which formed the subjects of the search warrants here attacked. In view of this corroborative information, we hold that the trial court

properly denied the defendants' motions to suppress the evidence seized pursuant to execution of the search warrants—these search warrants being properly supported by probable-cause findings by the issuing magistrate.

## IV

### Sufficiency of the Evidence to Establish Defendant Alfonso's Possession of Cocaine

■ Defendant Alfonso asserts that the evidence was insufficient to establish that he was in possession of cocaine obtained from his home at 508 East 5th Street in Azusa. Defendant Alfonso concedes that he and his wife Elodia were residents of the premises upon the date of the search and seizure of the cocaine; but Alfonso points out that he was absent from the premises when the search was conducted while his wife Elodia was present. From these facts Alfonso argues that only nonexclusive possession is established. Defendant Alfonso's view that a nonexclusive possession of narcotics precludes a finding of possession on his part indicates an erroneous concept of what elements are necessary to support a finding of possession. ■ "The elements of the crime of possession of narcotics are physical or constructive possession thereof coupled with knowledge of the presence of the drug and its narcotic character [citations]; *possession need not be exclusive.* [Citation.]" (*People* v. *White* (1969) 71 Cal.2d 80, 82 [75 Cal.Rptr. 208, 450 P.2d 600].) (Italics added.)

■ It is well settled law that the elements of the crime of possession of narcotics may be established by circumstantial evidence and any reasonable inferences drawn therefrom. (*People* v. *Groom* (1964) 60 Cal.2d 694 [36 Cal.Rptr. 327, 388 P.2d 359].) ■ A principle equally well established is that the fact of actual possession of a narcotic substance may constitute substantial evidence that the possessor was aware of its narcotic character. (*White, supra,* 71 Cal.2d 80, 82.) ■ Here the narcotic, cocaine, was found concealed in a light fixture of the master bedroom of the premises of defendant and his wife, Elodia. The cocaine, the cutting substance and a substantial sum of money—all located in one hidden place in Alfonso's master bedroom—constitute circumstantial evidence sufficient to support the trial judge's finding that defendant Alfonso was a joint possessor of these items along with his wife, Elodia.

The fact that Alfonso's wife was not charged as a possessor of the contraband provides defendant Alfonso with no defense. Defendant

Alfonso presented no evidence to contradict the inference of possession, with knowledge of the narcotic character of the substance involved, which the trial judge was entitled to draw from the uncontradicted evidence.

V

*Sufficiency of the Evidence to Establish the Element of "Possession for Sale"*

Defendant Alfonso advances the argument that, even assuming that the evidence was sufficient to sustain a finding of simple possession, it was insufficient to sustain a finding that he possessed the cocaine for purposes of sale. We find this argument totally lacking in merit.

It is to be noted that a police officer, qualified as an expert in narcotics, expressed an opinion at the preliminary examination that the cocaine was possessed for sale. Defendant Alfonso's lack-of-foundation objection—that there was no proof that the material found was in fact a narcotic—was taken under submission, subject to a later motion to strike. Subsequent evidence established that the substance was cocaine.

In urging that the evidence was insufficient to establish possession of cocaine for purposes of sale, defendant Alfonso calls our attention to testimony given by Pollock, the police-officer expert on narcotics, on cross-examination. The officer testified on cross-examination that a user of narcotics might possess a cutting agent to cut cocaine for his own use. And, in answering the question of how many users of cocaine will buy larger amounts than that which the officers found on the premises of this defendant, the officer's reply was that "[i]t is rare." And, to the question "[b]ut it does happen?", the officer replied: "I imagine it has happened in the realm of anything is possible, but it is rare."

This cross-examination testimony by the officer cannot be deemed controlling to destroy the credibility of the officer's opinion that the cocaine found on Alfonso's premises was possessed for sale in light of the evidence that the cocaine, the cutting agent, and the $2,000 in cash, were all found in the same hiding place. Defendant Alfonso also points out that there was no evidence introduced by the prosecution as to any packaging or preparation to sell performed by him. We must conclude, however, that the absence of such evidence is no more controlling in destroying the credibility of the officer's direct-examination opinion than his cross-examination testimony.

Defendant Alfonso asks us to speculate that the cocaine, the cutting agent and the $2,000 may have belonged to his wife, Elodia, and that the light fixture was her hiding place for these items which she did not want him or their children to know about. These are all speculative inferences which the trial judge was not required to make from the evidence introduced, since defendant Alfonso offered no evidence either through defense witnesses or through cross-examination of prosecution witnesses to lead to such inferences as being reasonable inferences from the evidence introduced at the preliminary examination.

Had defendant Alfonso made an objection to the officer's testimony expressing an opinion as to whether the cocaine was possessed for sale on the ground that such an opinion was not the type of opinion that "would assist the trier of fact," as required by Evidence Code section 801, subdivision (a), the trial court might well have sustained such an objection. It is a reasonable view that a jury is capable of drawing an inference from the evidence introduced—without a narcotics officer's opinion—as to whether possession was held for sale. Hence, the expert's opinion would provide no assistance to the jury as the trier of fact. (See *People* v. *Arguello* (1966) 244 Cal.App.2d 413 [53 Cal.Rptr. 245]; cf. *People* v. *Newman* (1971) 5 Cal.3d 48 [95 Cal.Rptr. 12, 484 P.2d 1356].) Certainly, in the absence of an appropriate objection to the expert's opinion and, in light of the circumstances that the cocaine, a cutting agent and a substantial sum of money were found in the same hiding place in defendant Alfonso's home, the trial judge was justified in finding that defendant Alfonso possessed cocaine for sale as charged in the information.

## VI

*Was It Prejudicial Error for the Trial Court
to Deny Defendant Alfonso's Motion for
Severance of Trial?*

Defendant Alfonso claims that it was prejudicial error for the trial court to deny his motion to sever the trial and permit him to be tried separately from the other codefendants charged in the seven-count information. This issue raised by Alfonso involves two sections of the Penal Code—section 1098 and section 954.

Section 1098 provides: "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they

must be tried jointly, unless the court order separate trials. In ordering separate trials, the court in its discretion may order a separate trial as to one or more defendants, and a joint trial as to the others, or may order any number of the defendants to be tried at one trial, and any number of the others at different trials, or may order a separate trial for each defendant; provided, that where two or more persons can be jointly tried, the fact that separate accusatory pleadings were filed shall not prevent their joint trial."

Section 954 provides, in pertinent part for our purposes, as follows: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. . . . the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately. An acquittal of one or more counts shall not be deemed an acquittal of any other count."

It is the position of the People that the trial court has a discretion whether to grant or deny a defendant's request for a separate trial and that the trial court properly exercised its discretion in the case at bench. The People rely upon *People* v. *Pike* (1962) 58 Cal.2d 70, 84 [22 Cal.Rptr. 664, 372 P.2d 656], in which it is stated: "Section 954 of the Penal Code permits joinder of 'two or more different offenses connected together in their commission. . . .' Such joinder is proper if there is 'a common element of substantial importance' in the commission of the offenses."

It is to be noted that in *Pike* the defendant seeking a severance was jointly charged with a codefendant in one count, although not so charged in other counts. The *Pike* case, therefore, dealt solely with the provisions of Penal Code section 954 and not with the provisions of Penal Code section 1098.

Defendant Alfonso points out that he was charged individually in only one count of the information; that he was not charged in any other of the six counts which named other codefendants as the perpetrators of the crimes alleged. Defendant Alfonso relies upon *People* v. *Ortiz* (1978) 22 Cal.3d 38 [148 Cal.Rptr. 588, 583 P.2d 113], for his position that it was

automatically error for the trial judge to deny his motion for severance under Penal Code section 1098. Defendant Alfonso's reliance upon *Ortiz* is well taken. The *Ortiz* court interpreted Penal Code section 1098 in a way which mandates that defendant Alfonso was entitled to a separate trial in the case at bench. The *Ortiz* court observed: "We construe the section [Pen. Code, § 1098] to mean that a defendant may not be tried with others who are charged with different crimes than those of which he is accused unless he is included in at least one count of the accusatory pleading with all other defendants with whom he is tried." (*Ortiz, supra,* 22 Cal.3d 38, 43; fn. omitted.) The *Ortiz* court reasoned that the requirement of Penal Code section 1098 "that defendants jointly charged be jointly tried—unless in the trial court's discretion separate trials are appropriate—clearly implies that a joint trial is improper if there is no joint charge." (*Id.,* at p. 43.)

The *Ortiz* court points out that the *Pike* holding related solely to an interpretation of section 954 of the Penal Code which allows consolidation of charges of different crimes in one accusatory pleading under certain circumstances and authorizes joint trials under such circumstances. However, the *Ortiz* court is careful to observe that, even though various counts in an information are properly joined by virtue of Penal Code section 954, such a joinder "cannot ignore the requirement of section 1098 that multiple defendants may *not* be tried together unless they are *jointly* charged with a crime." (*Ortiz, supra,* 22 Cal.3d 38, 45.) (Italics added.) Based upon the *Ortiz* holding, we conclude that, since defendant Alfonso was charged with possession of cocaine for sale individually in count V of the information, and was *not* charged as a joint perpetrator with any other codefendant in any of the other six counts of the information, it was unquestionably a violation of Penal Code section 1098 to consolidate his trial with the trial of those codefendants charged in the other six counts of the information.

■ However, the patent error of the trial court in refusing to grant defendant Alfonso's motion for a severance of his trial does not automatically constitute prejudicial error requiring a reversal of his conviction. Even though, as a matter of law, there was no basis for a joint trial under the circumstances involved in the case before us, an error in denying severance does not require an automatic reversal of defendant Alfonso's judgment of conviction.

This view of *nonautomatic* reversible error is derived from the holding in *Ortiz* in which the court applied the same principle of nonautomatic

reversal to an erroneous denial of a motion for trial severance in a situation in which there existed a *nondiscretionary* obligation upon the trial court to grant a defendant's motion for a trial severance. The situation presented was that of an *abuse* of the trial court's *discretionary* authority to deny a trial severance motion found in *People* v. *Massie* (1967) 66 Cal.2d 899 [59 Cal.Rptr. 733, 428 P.2d 869]. In refusing to recognize a distinction between the discretionary *Massie* situation and the nondiscretionary situation presented in *Ortiz,* the court remarked: "The theme of *Massie* was that the right to a separate trial is not so fundamental that its erroneous denial requires automatic reversal. We fail to see why this principle does not apply to all improperly joined trials." (*Ortiz, supra,* 22 Cal.3d 38, 46; fn. omitted.)

Under the *Ortiz* holding, we are therefore required to determine whether the error in denying a trial severance to defendant Alfonso constituted prejudicial error. ■ The factors to be considered in determining the existence of prejudicial error were set forth in *Massie* and followed in *Ortiz.* The factors to be considered are principally the following: (1) whether a separate trial would have been "significantly less prejudicial to defendant than the joint trial"; (2) "whether there was clear evidence of defendant's guilt"; and (3) a reversal is justified "only upon a showing 'of a reasonable probability that the defendant would have obtained a more favorable result at a separate trial.' " (*Ortiz, supra,* 22 Cal.3d 38, 46.)

■ It remains for us to apply the analysis of *Massie* and *Ortiz* to the case at bench and determine whether the denial of a separate trial to defendant Alfonso was prejudicial. *First,* there is the question with respect to what extent a separate trial would have avoided the danger of prejudice flowing from evidence of narcotic violations introduced against the other codefendants. Defendant Alfonso argues that, had his motion for severance been granted, he would have had a jury trial, and the absence of the evidence introduced against the remaining codefendants would have enabled him to obtain a fairer consideration by the jury regarding the charge against him of possession of cocaine for sale.

Defendant Alfonso argues that evidence as to the involvement in narcotic trafficking of the other codefendants could well have been used by a jury in determining the validity of the charge against him. But in view of the nature of the charge against Alfonso, namely, the possession for sale of cocaine found in the home of defendant and his wife, we fail to see how the narrow issues involved in the charge of that possession could

have been affected to any appreciable degree by evidence presented against the other defendants relating to transactions and events occurring away from Alfonso's home. Under the circumstances, therefore, we conclude that a separate trial for Alfonso would not have been significantly less prejudicial to him than the joint trial.

*Second,* we consider the factor of whether there was clear evidence of defendant's guilt. Since defendant offered no evidence in his favor, we have only the prosecution's evidence which established, without contradiction, that the 14.25 grams of cocaine, the 10.5 grams of cutting agent, and $2,000 in cash, were all hidden in the master bedroom of defendant's home. There was no evidence that any adults occupied this home other than defendant Alfonso and his wife. We find that the evidence presented by the prosecution constituted clear and persuasive evidence of defendant Alfonso's guilt.

*Third,* we consider the factor of the probability that defendant Alfonso would have obtained a more favorable result at a separate trial. A consideration of all of the circumstances involved in the case at bench leads to the conclusion that there exists no reasonable probability that defendant Alfonso would have obtained a more favorable result at a separate trial. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) We conclude, therefore, that the error in denying defendant Alfonso's motion for a trial severance was nonprejudicial.

The judgments are affirmed.

Kingsley, Acting P. J., and Alarcon, J., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied September 20, 1979.