Filed 6/16/14  P. v. Fogelman CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>YVONNE FOGLEMAN,<br><br>    Defendant and Appellant. | A136610<br><br>(San Mateo County<br>  Super. Ct. No. SC074562A) |

This is an appeal from judgment following appellant Yvonne Fogleman's conviction for possession of methamphetamine for sale.  Appellant challenges this judgment on the sole ground that the evidence was insufficient to establish the methamphetamine found in her residence belonged to her.  We reject this evidentiary challenge and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On November 10, 2011, an information was filed charging appellant with one count of possession of methamphetamine for sale in violation of Health and Safety Code section 11378.  Appellant waived her right to a jury trial, and a bench trial began May 21, 2012.  The following evidence was presented at this trial.

**A.     The Prosecution's Case.**

On September 15, 2011, about one month before the crime charged in this case was committed, several members of the San Mateo County Narcotics Task Force, including Special Agents Luis Leyva and Lance Sandri and Sergeant Daniel Guiney of

the San Mateo County Sheriff's Office, began surveillance of the residence at 55 San Benito Road in Brisbane (hereinafter, the residence). Acting on a tip, these officers were on the lookout for a white Subaru owned by identified narcotics dealer Enrique Quintero, who had told an undercover officer his supplier lived in Brisbane.

At about 2:30 p.m. the same day, the white Subaru arrived at the residence, and the driver, later identified as Quintero, exited the vehicle holding a white plastic bag with something inside. A woman, later identified as appellant and recognized by Sergeant Guiney from prior drug investigations, came out of the residence to greet him. After opening and closing the trunk, Quintero went inside the residence with appellant.

Between the time appellant and Quintero first entered the residence and the time Quintero left in the Subaru with the same white plastic bag in the early evening, six separate visitors came to the residence. First, at about 3:29 p.m., a white Ford pickup parked in front of the residence. Appellant exited the house, approached the truck, and spoke briefly to the occupants. About a minute later, the truck left and appellant went back inside. Then, at about 3:49 p.m., a woman approached the residence on foot. Appellant opened the door and appeared to engage in a hand-to-hand transaction with this woman before she left a few minutes later. Next, at about 4:55 p.m., a black Volvo arrived. Appellant came out of the residence, briefly approached the Volvo and made contact with the occupant(s) before the Volvo drove off a few minutes later. Less than five minutes later, at 4:58 p.m., another white Ford pickup arrived, this one with San Francisco County tags. Appellant left the house and entered the pickup, which then drove off only to return a few minutes later. At this point, appellant returned to the residence and the pickup left. And, finally, at about 5:02 p.m., a blue Aerostar van arrived. Appellant again came outside and briefly made contact with the occupant(s) before the van drove away a few minutes later. Quintero then left at about 5:45 p.m.[1]

---

[1] Because the investigation was ongoing, the visitors were not detained. Quintero, however, was trailed by Sergeant Guiney and Special Agent Leyva from the residence to Gilroy, when they were instructed to end the surveillance.

One month later, on October 14, 2011, Sergeant Guiney, California Highway Patrol Officer Mark Schaukowitch, and other officers executed a search warrant at the residence. When the officers first knocked on the front door, the owner of the residence, Frank Christopher, responded. Within two minutes, the officers had handcuffed Christopher and proceeded to the downstairs in-law unit, which Christopher stated was rented by appellant and accessible only through a door in the backyard.

When no one answered the door at the in-law unit after 15 seconds, the officers forced entry and found a naked man seated on the toilet. The officers ordered the man to the ground. The man was identified as Steve Garcia, appellant's boyfriend who sometimes stayed at the residence. He requested permission to wipe himself before leaving the toilet. The officers gave him permission, at which time they confirmed from the toilet paper that Garcia had taken a bowel movement. Officers then searched the unit, confirming no one but Garcia was present.[2]

Sergeant Guiney searched a closet in the in-law unit tightly packed with women's clothing. It also contained boxes and bags with additional clothing and other personal items. In a woman's rain jacket in the back left side of this closet, Officer Guiney found in the left pocket 23 grams of methamphetamine in a clear plastic bag inside a makeup bag, and in the right pocket 42 grams of methamphetamine in another clear plastic bag. Also in the right pocket he found a digital scale and a glass pipe for smoking methamphetamines that appeared to have been used.

On top of a dresser, officers found small amounts of methamphetamines (between a half gram and one gram) in clear plastic bags. They also found a straw cut at an angle to facilitate drug ingestion. Finally, they found evidence of appellant's residence in the unit, including a DMV document and Fastrack bill with her name.

Both Special Agent Sandri and Sergeant Guiney also offered expert testimony at trial. Special Agent Sandri testified that, in his opinion, appellant was engaging in hand-to-hand narcotics sales with the visitors to the residence on September 15, 2011. In

---

[2]     Appellant had left for work early that morning.

particular, he noted that, in his experience, drug dealers will enter into vehicles and drive off for short periods of time to conduct narcotics sales.

Sergeant Guiney added that, in his opinion, the presence in the in-law unit of a large quantity of methamphetamines and a digital scale indicated possession of narcotics for sale on October 14, 2011. He also acknowledged that the presence of the straw, smaller amounts of methamphetamines on the dresser, and the glass pipe were consistent with some portion of these narcotics being possessed for personal use. Finally, Sergeant Guiney agreed with Special Agent Sandri that appellant was engaged in hand-to-hand narcotics sales on September 15, 2011, with narcotics supplied by Quintera. He testified without any defense objection that appellant's interactions with the six visitors to the residence on September 15 "corroborates or enhances my opinion [that the methamphetamine seized from her rain jacket on October 14 was intended for sale] because we had a report of a narcotics dealer arrive [at] 55 San Benito which we observed, then observed what appeared to be at least six hand-to-hand narcotics transactions . . . ."

Finally, Christopher, the owner of the residence, testified that he was a friend of appellant, and had allowed her to move into his in-law unit about a year and a half to two years ago when she needed a place to live. He explained she was in the process of moving out, and would be completely moved out within a few days. Christopher acknowledged a prior drug possession conviction, but denied having any drugs at his residence. Christopher had seen appellant wearing the rain jacket in which the narcotics had been found.

### B.     The Defense Case.

Michael Johnson, appellant's longtime friend and the owner of the white Ford pickup with San Francisco County tags that came to the residence on September 15, 2011, testified on her behalf. He was employed by the City and County of San Francisco as an electrical lineman. He explained that, on September 15, 2011, he picked up appellant and drove her to a nearby store for cigarettes. He added that it was not unusual in a small town like Brisbane for people to pull over to chat with acquaintances.

4

Similarly, Christopher described appellant on cross-examination as a "social butterfly" who often chatted with acquaintances. She had lived in Brisbane a long time and knew many people. However, he acknowledged that it was abnormal even for appellant to have six people show up separately at her residence within hours of each other on the same afternoon.

Finally, defense counsel offered the preliminary hearing testimony of Special Agent Koti Fakava, who described hearing Garcia moving around in the in-law unit while officers were still upstairs with Christopher. Special Agent Fakava also testified that two to three minutes elapsed from when the officers arrived at Christopher's front door to when they entered the in-law unit.

### C.     The Trial Court's Judgment.

Upon completion of trial, the trial court found appellant guilty as charged. On September 17, 2012, the trial court suspended imposition of a sentence and placed appellant on probation for three years with the condition that she serve 120 days in jail. This timely appeal followed.

### DISCUSSION

Appellant's sole challenge is to the sufficiency of the evidence to support her conviction for possession of methamphetamines for sale. "In order to sustain a conviction of possession of narcotics or a dangerous drug for sale, the prosecution must show that the accused had control over the contraband with knowledge of its character, and that such possession was for the purpose of sale. [Citations.] On review, the sole question is whether there is substantial evidence to sustain the implied finding that each of the foregoing elements has been established. [Citations.] It is established that possession for the purpose of sale may be established by circumstantial evidence, and that the quality and value of the contraband held, particularly when viewed in the light of expert testimony, are factors which may indicate that the contraband was held for the purpose of sale rather than individual use. [Citations.]" (*People v. Shipstead* (1971) 19 Cal.App.3d 58, 77.)

5

"Substantial evidence is defined as evidence that is reasonable, credible, and of solid value. (*People v. Elliot* (2005) 37 Cal.4th 453, 466 [35 Cal.Rptr.3d 759, 122 P.3d 968].) A reviewing court must accept logical inferences the jury might have drawn from the circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396 [133 Cal.Rptr.2d 561, 68 P.3d 1].) ' "A reasonable inference, however, "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence.' " [Citations.]' [Citation].)" (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1416-1417. See also *People v. White* (1969) 71 Cal.2d 80, 83 ["elements may be established by circumstantial evidence and any reasonable inferences drawn from such evidence"].)

Here, appellant challenges the sufficiency of the evidence supporting the trial court's finding that she constructively possessed, either individually or jointly, the methamphetamines found in the rain jacket in the in-law unit closet. "Possession may be either actual or constructive; the latter is established by showing that defendant maintained some control or right to control over contraband in the physical possession of another." (*People v. Rogers* (1971) 5 Cal.3d 129, 134.) Accordingly, "[t]o establish constructive possession, the prosecution must prove a defendant knowingly exercised a right to control the prohibited item, either directly or through another person. ([Citation]; *People v. Mejia* (1999) 72 Cal.App.4th 1269, 1272 [85 Cal.Rptr.2d 690] [defendant need not physically have the weapon on his person; constructive possession established where a person knowingly exercised dominion and control over an item].) Possession may be shared with others. [Citation.] But mere proximity to the weapon, standing alone, is not sufficient evidence of possession." (*People v. Sifuentes, supra,* 195 Cal.App.4th at p. 1417.)

We conclude the evidence in this case is sufficient to establish appellant had constructive possession, either individually or jointly, of the narcotics seized from the in-law unit at 55 San Benito Road in Brisbane on October 14, 2011. Among other relevant evidence, the record reflects a total of 65 grams of methamphetamines was found in a

closet full of appellant's possessions in a rental unit in which she had been living for at least a year and a half to two years. The record further reflects these narcotics were found in the left and right pockets of a rain jacket that, according to appellant's longtime friend, Christopher, belonged to her. In addition, elsewhere in the in-law unit were other indicia of appellant's ongoing control of the residence, including a DMV document and Fastrack bill containing her identity.

To dispute this evidence of her constructive possession of the seized narcotics, appellant argues that her boyfriend, Garcia, was the only person present at the in-law unit during the police search and had the opportunity to hide the drugs in the rain jacket in the closet before the officers arrived. However, the record also reflects that the officers found Garcia naked on the toilet when they forcibly entered the unit, which undermines appellant's theory that he could have hidden the drugs in the time period after the officers knocked on the front door of the residence, but before they forced entry into the downstairs in-law unit. The officers consistently testified that only two to three minutes elapsed from the time they knocked on the front door until the time they entered the in-law unit. The officers also confirmed Garcia had been in the process of having a bowel movement when they entered.[3] Further, Officer Guiney testified that the closet where the narcotics were found did not appear rifled prior to their search, despite being tightly packed with women's clothes and other possessions. Thus, while it is entirely possible Garcia jointly possessed the narcotics, the record nonetheless permits the inference that appellant was not just aware of, but in control of, the narcotics hidden in her rain jacket in the back of the closet in her rental unit when she left for work earlier that day. (*People v. Williams* (1971) 5 Cal.3d 211, 215 ["Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of

---

[3] As stated above, Garcia asked permission from the officers to wipe himself before complying with their demand to get on the ground. Garcia's request was granted and, at that time, an officer observed fecal matter on the toilet paper.

the accused and another"]; see also *People v. Magana* (1979) 95 Cal.App.3d 453, 464 ["the narcotic, cocaine, was found concealed in a light fixture of the master bedroom of the premises of defendant and his wife, Elodia. The cocaine, the cutting substance and a substantial sum of money — all located in one hidden place in Alfonso's master bedroom — constitute circumstantial evidence sufficient to support the trial judge's finding that defendant Alfonso was a joint possessor of these items along with his wife, Elodia"].)

Finally, we acknowledge appellant's argument that the evidence from Sergeant Guiney and Special Agent Sandi regarding her September 15, 2011 interactions with various visitors to the residence does not establish that she possessed the methamphetamines found a month later in the rain jacket. Perhaps not. However, the identified evidence is nonetheless relevant to the more general issue of whether she possessed the narcotics seized on October 14, 2011 for the purpose of sale rather than for personal use. As these law enforcement experts opined, the fact that appellant engaged in conduct consistent with hand-to-hand narcotics sales on September 15, 2011 is one circumstance to be considered, in addition to the large quantity of narcotics and the presence of a digital scale in her rain jacket, in determining that she intended to sell the narcotics seized on October 14, 2011.

## DISPOSITION

The judgment is affirmed.


_____
Jenkins, J.


We concur:

_____
McGuiness, P. J.

_____
Siggins, J.


8