[Crim. No. 20126. Aug. 30, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH R. ORTIZ, Defendant and Appellant.

**COUNSEL**

Paul N. Halvonik, State Public Defender, Charles M. Sevilla, Chief Assistant State Public Defender, Jonathan B. Steiner and Cheryl Lutz, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Lawrence P. Scherb II, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.**—Defendant Joseph R. Ortiz appeals from a judgment of conviction for first degree armed robbery (Pen. Code, § 211) following a jury trial which also involved three codefendants accused of a crime distinct from the one in which defendant participated. Defendant contends that a pretrial motion to sever was improperly denied and, as a result, his defense was substantially prejudiced by the concurrent prosecution of a crime with which he was not charged.

On April 11, 1976, Beverly Fleming was approached by James Burris for the purpose of buying heroin. Burris had previously agreed with George Rivens that he would make a buy for the two of them, the latter having contributed $25 toward the purchase. Previously Fleming had an arrangement with one Willie Starling, an established drug dealer, whereby the latter would supply the needs of Fleming's $75-a-day heroin habit in exchange for sexual entertainment.

On the evening of the 11th, Fleming obtained narcotics from Starling and delivered them to Burris and Rivens, who became angry on discovering that the heroin had been diluted with lactose to the extent that it was valueless. After the two men appeared at her door early the following morning, Fleming drove Burris and Rivens to Starling's apartment. Fleming initially entered the apartment alone to speak with Starling, who stated he had no cash with which to make good the loss, but indicated he was due to receive a heroin delivery shortly.

Fleming left, but returned later, followed by Burris and Rivens. A lively argument ensued between Burris and Starling regarding the quality

of the heroin, and it quickly evolved into a wrestling match. Rivens did not participate in the confrontation and Fleming apparently left unobtrusively. Burris and Rivens departed, unsatisfied.

A short while later, Starling telephoned Fleming to express his anger because she had led Burris and Rivens to his apartment. He also told Fleming that he would "get even" with the two men by calling the police and alleging that a robbery had been committed, a threat Fleming initially mistook as jest. After Fleming's arrest, Starling again called to say that he would "cut her loose" from any complicity in the crime once the trial began.

Starling denied that he was an active drug dealer. He claimed he had not seen Fleming or Burris for more than a year prior to the date in question and that Fleming had enticed him into opening his apartment door, whereupon the two men forced their way in. An armed robbery allegedly followed in which Starling was repeatedly threatened at knife and gun point and ultimately tied up in the bedroom while his color television was removed.

The foregoing was the substance of the count I charges. Count II arose out of an armed robbery of Georgia Solomos, owner of the Santa Monica "Mini Mart," the events occurring a few hours after the robbery alleged in the first count. According to the People's witnesses, three men, including Rivens and defendant, were seen conferring in a blue Oldsmobile parked in an alley adjacent to the market on the afternoon of April 12. Rivens left the alley, entered the market, purchased some candy, and returned to the car. Shortly thereafter, defendant and Rivens reentered the store together.

In response to Solomos' inquiry regarding his need for assistance, defendant pointed a handgun at her and announced, "I don't want help. This is a hold-up." He asked for money, and Solomos complied by emptying the contents of her cash register—approximately $150—into a current copy of the local newspaper, the Evening Outlook, which lay open on the counter. Defendant took the victim's purse, sweater, and the money, and left the premises with Rivens. A neighbor who had witnessed the activity of the men outside the store soon entered, and he and Solomos called the police.

Defendant, Rivens, Fleming and Burris were arrested together the same afternoon, minutes after the robbery of the market, on the basis of a

police radio call, which included a description of the perpetrators of the robbery and their vehicle. Officers observed the car parked on Rose Street in Venice and found that it was registered to one Barnado, a resident of apartment No. 3, 714 Rose Street.

Two officers covered the rear of the building while the remainder entered through the front door. Rivens' attempt at escape from a rear window was foiled. Defendant was discovered hiding in a large closet from which Solomos' purse was later recovered. The officers also found Solomos' sweater in the apartment as well as a popcorn can filled with coins wrapped in that day's copy of the Evening Outlook. Fleming, Burris, Rivens, and defendant were arrested. Defendant and Rivens were identified by Solomos at the preliminary hearing as the perpetrators of the robbery of the market.

Fleming, Burris and Rivens were charged with armed robbery in count I of the information, and defendant and Rivens were charged with armed robbery in count II. The three defendants charged in count I were found not guilty, but the jury could not agree as to Rivens' guilt on count II, and the court declared a mistrial. Defendant was found guilty of the crime charged in count II.

Defendant had made a timely motion to sever his trial from that of the other defendants upon the ground that he was not charged with the separate offense stated against Burris, Fleming and Rivens in count I, citing *Dove* v. *Superior Court* (1974) 39 Cal.App.3d 960 [114 Cal.Rptr. 889]. The trial court denied the motion, and later denied defendant's motion for a new trial based upon the same ground.

██ On this appeal from the ensuing judgment of conviction, defendant asserts primarily that the trial court's denial of his motion for severance violated section 1098 of the Penal Code because he was not jointly charged with his codefendants in any count of the information. As we shall see, defendant is correct in this assertion.

At the threshold, we reject the contention of the People that defendant is precluded from claiming on appeal that the trial court erred in denying his motion for severance because the transcript of the oral arguments on the motion is not before us. Defendant has included in the record on appeal his motion to sever, of which we take judicial notice (Evid. Code, § 459, subd. (a)), and the denial of his motion is confirmed by the minutes included in the clerk's transcript. Since we shall conclude that

the trial court was required to grant the motion as a matter of law under section 1098 of the Penal Code, the failure to include in the record the transcript of the oral arguments does not preclude our consideration of defendant's claim.

Section 1098 of the Penal Code provides in part, "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order separate trials."[1] We construe the section to mean that a defendant may not be tried with others who are charged with different crimes than those of which he is accused unless he is included in at least one count of the accusatory pleading with all other defendants with whom he is tried.[2]

The requirement of the section that defendants jointly charged be jointly tried—unless in the trial court's discretion separate trials are appropriate—clearly implies that a joint trial is improper if there is no joint charge. Decisions interpreting section 1098 are consistent with this construction. Indeed, cases have consistently held that it is error to try together different defendants for different crimes unless at least one count of the accusatory pleading charges all the defendants with a single crime.

In *Dove* v. *Superior Court* (1974) *supra,* 39 Cal.App.3d 960, a husband was charged in one count with selling cocaine, and his wife was charged in a different count with the same crime, occurring on a different date, but the two sales were made from the same location. The trial court refused to sever their trials, and this refusal was held to be erroneous. The appellate court determined that even if under the doctrine of constructive possession the husband and wife could have been charged together on each of the counts, they were in fact not jointly charged in one count, and such a charge is a prerequisite to a joint trial under section 1098. The present case is even more demanding of severance, since defendant could not have been charged in count I with the robbery of Starling.

[1]The remainder of the section provides, "In ordering separate trials, the court in its discretion may order a separate trial as to one or more defendants, and a joint trial as to the others, or may order any number of the defendants to be tried at one trial and any number of the others at different trials, or may order a separate trial for each defendant; provided, that where two or more persons can be jointly tried, the fact that separate accusatory pleadings were filed shall not prevent their joint trial."

[2]As we shall see, *infra,* an indictment or information alleging more than one count must also comply with the provisions of section 954 of the Penal Code in order to justify a joint trial of more than one count.

*People* v. *Davis* (1940) 42 Cal.App.2d 70 [108 P.2d 85], also supports our conclusion. There, the defendant and George Miller were charged with two separate counts of robbery. A third count charged George and Doris Miller with another robbery. It was held that the trial of the counts charged against the defendant with the separate crime charged against the two Millers was erroneous because they were "separate and distinct crimes, occurring at different times, against different persons, and . . . charged against different defendants." (*Id.,* at p. 74.)

*Davis* was followed in *People* v. *O'Leary* (1955) 130 Cal.App.2d 430 [278 P.2d 933]. Watson and Weaver were charged with one count of robbery, Weaver and O'Leary with another, and O'Leary with a third. Each count involved a separate crime committed on a different date against a different victim. The court, relying upon *Davis,* held that it would have been erroneous and prejudicial to try Watson with his codefendants, but that since the codefendants pleaded guilty prior to trial and the jury was only aware of the substance of the accusatory pleadings against the codefendants, the error was not prejudicial.

Those cases which have allowed joint trial of different crimes committed by more than one defendant have done so upon the ground that "there was a joint charge as to one of the crimes . . . ." (*People* v. *Pike* (1962) 58 Cal.2d 70, 85 [22 Cal.Rptr. 664, 372 P.2d 656]; *People* v. *Spates* (1959) 53 Cal.2d 33, 36 [346 P.2d 5]; *People* v. *Chapman* (1959) 52 Cal.2d 95, 97 [338 P.2d 428].)[3]

The People do not directly traverse the assertions of defendant in this regard. They rely upon section 954 of the Penal Code, which allows consolidation of charges of different crimes in one accusatory pleading, under certain circumstances.[4] However, even if the two counts in the

[3]In these cases the joinder of multiple counts was also held to be proper under section 954 of the Penal Code.

[4]Section 954 provides: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court; provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately. An acquittal of one or more counts shall not be deemed an acquittal of any other count."

information were properly joined under section 954, we cannot ignore the requirement of section 1098 that multiple defendants may not be tried together unless they are jointly charged with a crime. Here, since the robbery alleged in count I was not charged against defendant, it was undeniably a violation of section 1098 to consolidate his trial with the trial of those defendants charged in count I.

In any event, even if arguendo we were to agree that section 954 is applicable despite the absence of a joint charge, the requirements of that section were not met. The People rely primarily upon the fact that both offenses charged in the information were robberies, and it is claimed therefore they constituted "two or more different offenses of the same class of crimes or offenses" under section 954. Clearly, however, the mere fact that robberies were charged in both counts is insufficient to satisfy the requirements of the section where multiple defendants are involved. "Otherwise," as has been said, "every single person charged with a specific crime could be required to stand trial with any number of other defendants charged with independent, unrelated crimes of the same class." (*People* v. *Biehler* (1961) 198 Cal.App.2d 290, 293 [17 Cal.Rptr. 862].)[5] *Dove, Davis,* and *O'Leary* also demonstrate the lack of merit in the People's contention. They all involved charges of the same class of crime against different defendants, in different counts of an accusatory pleading, yet joint trial of the defendants was held to be improper.[6]

We next inquire whether the error in denying defendant's motion for severance was prejudicial so as to require reversal of the conviction.

[5]The only cases cited by the People in support of their assertion involved the question whether the trial court was required to sever for trial several counts of an information charging different crimes against the same defendant. (*People* v. *Matson* (1974) 13 Cal.3d 35, 37-39 [117 Cal.Rptr. 664, 528 P.2d 752]; *People* v. *Moran* (1973) 33 Cal.App.3d 724, 726-728 [114 Cal.Rptr. 413]; *People* v. *Meneley* (1972) 29 Cal.App.3d 41, 47-51 [105 Cal.Rptr. 432].)

[6]Section 954 also allows the joinder of separate counts in an information which charges "two or more different offenses connected together in their commission." The People contend that this standard is met here because "there appears at least the suggestion" that the same gun was used in both offenses. However, a motion for severance must be decided on the basis of the showing made at the time the motion is made, and not upon what transpired at the trial. (*People* v. *Santo* (1954) 43 Cal.2d 319, 332 [273 P.2d 249].) There is no indication that the evidence upon which the People rely was before the trial court at the time the motion for severance was made. In any event, the evidence at the trial did not convincingly establish that the same gun was used in both offenses. Starling described the gun allegedly used in the robbery as a "blue steel automatic," while Solomos testified that the gun used in the robbery of the market was silver.

 Defendant contends that his conviction must be reversed because as a matter of law there was no basis for a joint trial. However, in *People v. Massie* (1967) 66 Cal.2d 899 [59 Cal.Rptr. 733, 428 P.2d 869], we rejected the notion that an error in denying severance requires automatic reversal by stating, "The question of the erroneous denial of a severance does not rise to jurisdictional magnitude, nor is the right to a separate trial so fundamental that its denial must occasion automatic reversal. We cannot say that in every case of an improper denial of a separate trial, a joint trial is necessarily so unfair as to amount to a miscarriage of justice. We must weigh the prejudicial impact of all of the significant effects that may reasonably be assumed to have stemmed from the erroneous denial of a separate trial." (66 Cal.2d at p. 923.)

Defendant seeks to distinguish *Massie* on the ground that we deal here with a severance motion which the trial court did not have the discretion to deny, while *Massie* related to an abuse of the trial court's discretionary authority to grant or deny a severance motion. But this distinction is without material significance. Defendant does not suggest why our reasoning in *Massie* rejecting per se reversal is any less compelling in the context of nondiscretionary severance. The theme of *Massie* was that the right to a separate trial is not so fundamental that its erroneous denial requires automatic reversal. We fail to see why this principle does not apply to all improperly joined trials.[7]

In *Massie* we analyzed the factors to be applied in considering whether the denial of severance was prejudicial. These factors include whether a separate trial would have been significantly less prejudicial to defendant than the joint trial, and whether there was clear evidence of defendant's guilt. (*Id.,* at p. 921.) We further held that reversal would follow only upon a showing "of a reasonable probability that the defendant would have obtained a more favorable result at a separate trial." (*Id.,* at pp. 922-923.)

 It only remains to apply the analysis of *Massie* here. Regarding the first element, defendant persuasively argues that extensive emphasis during trial on the narcotics involvement of the three codefendants joined in count I adversely affected his ability to defend against the allegations

---

[7]Defendant relies on language in *People v. Davis supra,* 42 Cal.App.2d 70, 74, which implies that a per se standard is appropriate. However, *Davis* also analyzed the factual circumstances presented to conclude that prejudice arose from the joint trial. (*Id.,* at pp. 75-76.) In any event, our decision in *Massie* must prevail over the earlier Court of Appeal decision in *Davis.*

of count II. The evidence on count I was permeated with references to frequent narcotics use by the three codefendants. Substantial testimony was received demonstrating Starling's long-standing activity as a heroin user and dealer, as well as his drug-related association with defendants Fleming and Burris. The pervasive as well as the dramatic nature of the testimony regarding the use of narcotics by the defendants charged in count I[8] implied defendant's association with the illicit narcotics activity of the codefendants, and may have led the jury to conclude that defendant was addicted to heroin, thereby establishing a motive for the robbery of the market. Much of the evidence relating to narcotics use by the three codefendants charged in the first count would have been inadmissible in a separate trial of defendant. Yet even in oral argument before this court, the Attorney General emphasized the dominance of narcotics at the site where the defendants were arrested.

Defendant makes a second point to support his claim that he was prejudiced by the error. All three codefendants testified during the trial, and only defendant failed to take the stand. The court gave an instruction to the effect that, although a defendant is not required to testify, an adverse inference may be drawn from his failure to deny or explain certain facts if he does choose to take the stand, and that "[I]n this case defendant has elected to and has testified . . . ."[9] That instruction could have adversely predisposed the jury in two respects: the jury may have drawn an unfavorable inference from the fact that only defendant failed to testify; or it may have been confused by the court's failure to note that defendant in fact did not testify and might have drawn an adverse inference from his failure to rebut the prosecution's evidence.

Regarding the second element of the *Massie* analysis—the strength of the evidence supporting defendant's guilt—there were significant deficiencies in the People's case. The predominant weakness is the uncertainty of the identification of defendant as the felon. Solomos described one

---

[8]Beverly Fleming testified that she offered sexual favors to Starling in exchange for heroin, and at one point she pulled up her shirt sleeves to reveal needle marks to the jury.

[9]The court gave CALJIC instruction No. 2.62 which provides in pertinent part: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. In this case defendant has elected to and has testified as to certain facts. If you find that he failed to explain or deny any evidence or facts against him which he can reasonably be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable . . . ."

of the robbers to the police as a man of Mexican descent, wearing a blue cloth jacket, and she stated that he had a black moustache. However, at the trial she testified that the robber did not have a moustache. Furthermore, 20 minutes after the robbery, she was unable to identify defendant as the robber.[10] While she did identify defendant at the preliminary hearing, she could not recall the color of his eyes or hair.[11] Finally, her identification of defendant during trial was not persuasive.[12]

Other aspects of the People's case can be described as far short of overwhelming: no showing was made regarding defendant's dominion and control over any of the stolen items found in the apartment where he was arrested; none of his fingerprints was found at the market nor was his connection established with the gun recovered by police.

Under all the circumstances, we hold there was a reasonable probability that defendant would have obtained a more favorable result at a separate trial[13] (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]).

The judgment is reversed.

Tobriner, J., Clark, J., Richardson, J., Manuel, J., and Newman, J., concurred.

---

[10]Solomos testified under cross-examination as follows: "Q. Isn't it a fact that at the time Mr. Ortiz was brought out you told the police that you weren't sure that he was the man? Is that a fact? A. Yes."

[11]At the preliminary hearing, Solomos was asked: "Q. What is it that makes you certain that he is the man? Is there anything particular about him that strikes your memory? A. I remember his eyes, the face. That's all.

"Q. What color were his eyes? A. I can't remember his eyes, what color.

"...

"Q. What color was his hair? A. His hair? I don't remember."

[12]At the trial, Solomos identified defendant as the robber on direct examination but on redirect examination the following exchange occurred:

"Q. You are not sure Mr. Ortiz is the man, isn't that right? Maybe he is, maybe he isn't. Is that your testimony? A. I think he is. I don't know.

"Q. But you are not sure or are you sure? A. (No audible response.)

"Q. I am receiving no answer. Are you sure it is him or are you not sure it is him? A. I don't know . . . .

"Q. And of all the people that you saw later on in handcuffs Mr. Ortiz is the only one that you think is maybe? A. Yes."

[13]There is no merit in the People's contention that no prejudice could have occurred because the three defendants charged in count I were found not guilty. Defendant's claims of prejudice are grounded in part on testimony regarding heroin use by the codefendants; it is irrelevant to this claim that the codefendants were not convicted of the robbery charge.

**BIRD, C. J.,** Concurring and Dissenting.—I reluctantly cannot sign the majority opinion, since it fails to articulate clear guidelines to trial courts which must rule on severance and joinder issues.

There are two statutes which deal with joinder, severance and consolidation in criminal prosecutions in our courts. Penal Code section 1098[1] sets forth when separate *defendants* may be tried together at one trial, and section 954 outlines when separate *offenses* or *counts* may be tried together (assuming the defendants may be joined under section 1098.)

These provisions operate in similar fashion. No joint trial is permissible except in certain prescribed situations: two or more defendants may be tried together only if they are "jointly charged" with a public offense (§ 1098); and two or more offenses or counts may be tried together if they are (1) "different offenses connected together in their commission," (2) "different statements of the same offense," or (3) "different offenses of the same class of crimes or offenses." (§ 954.) Unless these conditions exist, a joint trial of defendants or offenses is " 'not authorized by statute and [does] not rest in mere discretion.' " (*People* v. *Davis* (1940) 42 Cal.App.2d 70, 75 [108 P.2d 85], quoting from *McElroy* v. *U.S.,* 164 U.S. 76, 81 [41 L.Ed. 355, 357, 17 S.Ct. 31].) However, the trial court may sever one or more defendants and/or counts even where a joint trial is permitted. "[T]he Legislature [has] left to the courts the determination of standards governing such [discretionary] severances." (*People* v. *Aranda* (1965) 63 Cal.2d 518, 529 [47 Cal.Rptr. 353, 407 P.2d 265].) Generally, a severance in this situation will be granted where a joint trial would be potentially prejudicial to one (or more) defendant on any count. (*Walker* v. *Superior Court* (1974) 37 Cal.App.3d 938 [112 Cal.Rptr. 767]; *People* v. *Chambers* (1964) 231 Cal.App.2d 23, 31-32 [41 Cal.Rptr. 551].)

The present case involves a question of the propriety of the joinder of defendants. Therefore, only section 1098 is implicated. The majority hold that since "a joint trial is improper [under section 1098] if there is no joint charge," the trial court was forbidden by statute from trying appellant together with the codefendants not charged with him in the Mini Mart robbery. (Maj. opn., *ante,* at p. 43.) The majority opinion fails to give any guidance to the trial court as to where the severance line should have been drawn. There were three possibilities, as can be seen by referring to the following diagram:

---

[1]All references hereinafter to statutes are to the California Penal Code, unless specifically stated otherwise.

| Count I<br>*(robbery<br>of Starling)* | Count II<br>*(robbery of<br>Mini Mart)* |
|---|---|
| F (Fleming) | |
| B (Burris) | O (Appellant) |
| R (Rivens) | R |

A severance could have been granted between (1) appellant and Rivens; (2) count I and count II, or (3) Rivens and his two codefendants on count I (Burris and Fleming). Yet, these three options, while they each satisfy the strict letter of the majority opinion, do not equally carry out the *purpose* underlying section 1098. That section places limits on the joinder of defendants in order to minimize "the vices inherent in a mass trial." (*People* v. *Biehler* (1961) 198 Cal.App.2d 290, 298 [17 Cal.Rptr. 862].) Among these are "the danger that the jury will find one or more defendants guilty as charged because of his association with evil men . . ." (*ibid.*) and the likelihood that the jury will use evidence, admitted only as to a codefendant, to the detriment of the others. (Cf. maj. opn., *ante,* at p. 47.)

The third severance option would not effectuate these purposes since it would permit evidence of both of the charged robberies to be admitted at appellant's severed trial. This would include the Starling robbery in which Rivens, but not appellant, was accused. While Fleming and Burris would not appear as *defendants* in such a trial, virtually all the evidence relating to them and to the Starling robbery would still have been admitted to prove or disprove *Rivens'* guilt on that charge. Thus, unless this option is ruled out, the protections to be gained by section 1098's limitation on joinder of defendants is illusory.

The majority opinion, in failing to address these three options, leaves the trial courts and the prosecutors, who draw up the pleadings in criminal cases, without adequate guidance. The law should not remain in this state of confusion and uncertainty until costly litigation decides the issue at some future date.