[No. A028718. First Dist., Div. Three. July 1, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY WICKLIFFE et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

**COUNSEL**

Stephen Selwyn Smith, under appointment by the Court of Appeal, Wood, Chettle, Henrioulle & Maddux and Leslie R. Chettle for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Ann K. Jensen and Morris Lenk, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MERRILL, J.**—Defendants and appellants Mark Stephen Page Mott and Jeffrey Wickliffe appeal from their convictions following a joint trial by jury. Mott was convicted of driving while under the influence of alcohol (Veh. Code, § 23152, subd. (a)), and driving at a 0.10 percent or more blood-alcohol level (Veh. Code, § 23152, subd. (b)). Wickliffe was convicted of battery with serious bodily injury (Pen. Code, §§ 242, 243, subd. (d)), and assault (Pen. Code, § 240).

I

On the evening of November 5, 1983, appellants Mott and Wickliffe planned to repossess a tractor truck from Harold Hayden. Mott worked in the repossession business. Wickliffe had assisted Mott on five or six previous repossessions.

According to evidence offered by appellants, they arrived around midnight at a bar in Concord. Appellants were acquainted with Derek Allman, the bartender. Mott and Wickliffe each consumed approximately four drinks. After closing the bar at 2 a.m., the three men left for Allman's residence, arriving there around 2:30 a.m. Each of the men drank one beer at Allman's house.

Allman accompanied appellants to Pittsburg where the repossession was to take place. Upon arrival Mott entered the driver's side and Wickliffe entered the passenger's side of the truck. Mott took a considerable amount of time warming up the truck and pulling it out of the driveway, grinding the gears as he moved the vehicle backwards and forwards three times.

Harold Hayden, the purchaser of the truck, lived in a mobilehome at this location. Hayden testified that he was asleep around 4 a.m. on the morning in question, when he was awakened by his wife and heard his truck running. Hayden's truck has two double-wheeled rear axles and is over twenty-three feet in length. Hayden looked out his living room window and saw the truck being moved. He thought it was being stolen, so he ran after the truck.

According to Hayden's testimony, the truck was moving about 10 miles per hour when Hayden jumped onto its handrail, hollering, "Stop! . . . Stop this damn truck!" As he reached down for the door handle in order to open the door on the passenger side, that door swung open, and Hayden felt himself being kicked in the face. Yelling "Stop this truck!" Hayden was kicked in the head as he tried to hold onto the ladder on the side of the

vehicle. Upon being kicked for the third time, Hayden was knocked off the truck onto the pavement.

Pittsburg Police Officer Richard Maxwell was on patrol duty that morning near Hayden's residence, at which time he saw a diesel truck in transit followed by a late model Thunderbird. He heard someone yelling and as he looked down the street he saw a white form going underneath the right rear wheels of the truck. As this object bounced approximately two feet in the air and landed on the pavement, Officer Maxwell realized that it was a man. All four tires on the right rear axle ran over Hayden and it was necessary for the Thunderbird, being driven by Allman, to swerve very sharply in order to avoid hitting him. Allman followed the truck to a stop sign, where Wickliffe jumped out of the truck and got into his vehicle. Officer Maxwell drove to Hayden, who was lying on the pavement, and then broadcast a description of the truck and its direction of travel.

Appellant Mott was stopped while driving the truck within minutes of the police broadcast. An officer concluded that Mott was under the influence of alcohol. Mott was transported to the police station and a blood sample was taken from him at about 5:30 that morning. The blood sample revealed that Mott had a 0.09 blood-alcohol percentage.

Hayden suffered numerous injuries as a result of falling from the truck. His pelvis was broken in three places; both of his legs were damaged; and all of his ribs on the left side were broken. Operations were necessary to repair intestinal damage and injuries to his head. He was required to wear a colostomy bag. He spent six months in the hospital and underwent five surgeries.

II

■ Each appellant contends that his conviction must be reversed because the trial court erred in denying his motion to sever his trial from that of his codefendant. They rely on *People* v. *Ortiz* (1978) 22 Cal.3d 38 [148 Cal.Rptr. 588, 583 P.2d 113] for the proposition that severance should have been granted inasmuch as neither appellant was jointly charged with the other on any count. We have determined that *Ortiz* does not apply to cases such as this one; but that this case is governed by the rule of *People* v. *Hernandez* (1983) 143 Cal.App.3d 936 [192 Cal.Rptr. 432], where all codefendants, whether jointly charged or not, committed offenses at the same time and place and as part of the same transaction.

In the information filed by the district attorney, Mott was charged with violations of Vehicle Code section 23153, subdivision (a) (driving under

the influence causing injury), and Vehicle Code section 23153, subdivision (b) (driving at 0.10 percent blood alcohol or above causing injury), and Wickliffe was charged with violations of Penal Code sections 242, 243, subdivision (d) (battery with serious bodily injury), and Penal Code section 245, subdivision (a)(1) (assault with deadly weapon). Because they were not jointly charged in any of the counts, each contends that under *Ortiz* he is entitled to a separate trial. In *Ortiz,* the defendant was jointly tried with three codefendants accused of a crime distinct from the one in which he had participated. The trial involved prosecutions for two robberies, committed on different dates and against different victims. The court condemned the practice of allowing the jury to hear evidence concerning a crime with which defendant had no connection. (*People* v. *Ortiz, supra,* 22 Cal.3d at pp. 45, 47.) Appellants' reliance on *Ortiz,* and similar authorities involving defendants charged with different and unrelated offenses is misplaced.

In *People* v. *Hernandez, supra,* 143 Cal.App.3d 936, the Court of Appeal affirmed the conviction of defendant Perez and held that *Ortiz* does not extend to cases such as the one before us where codefendants jointly committed a series of crimes against the same victim at the same time and in the same place. (*Id.,* at p. 939.) Perez was convicted of two counts of rape committed in concert, following a jury trial at which he and two codefendants were jointly tried. The prosecution arose from the "gang rape" of a woman by defendants following a party at the woman's house. Perez was charged with two counts of rape committed in concert with a third codefendant, who pleaded guilty prior to trial. However, Perez was not jointly charged with either of the two remaining codefendants on any count. The court denied his motion to sever his trial from that of his codefendants, and all three defendants were convicted of various offenses arising out of the incident. (*Id.,* at p. 936.)

Appellants Mott and Wickliffe were drinking together before the incident. They went to Hayden's home to repossess his truck. Hayden was injured when Wickliffe knocked him from the moving truck, and the rear wheels on that truck, which was driven by Mott, crushed Hayden's midsection. They left the scene together, without stopping, after they had injured Hayden. The offenses each appellant was charged with arose from a single set of circumstances against the same victim during the same time and in the same place. Hence, appellants were properly tried together. Furthermore, evidence concerning the conduct of both Mott and Wickliffe would have been admissible in either a joint or separate trial.

Appellants next argue that they suffered greatly from guilt by association in having their cases tried jointly, because the jury heard evidence regarding the codefendant's conduct. Appellant Mott maintains that the jury heard

evidence regarding Wickliffe's kicking the victim, which would not have been admissible at a separate trial for driving under the influence of alcohol. Appellant Wickliffe contends that had he been separately tried, evidence of Mott's intoxication would have been inadmissible, and, therefore, he was greatly prejudiced by being associated with Mott. Appellants rely on *People v. Chambers* (1964) 231 Cal.App.2d 23 [41 Cal.Rptr. 551], for the proposition that they were convicted because of guilt by association.

*Chambers* held that guilt by association is a thoroughly discredited doctrine, but appellants' reliance on this case is misplaced. *Chambers* is readily distinguishable from the case at hand. Chambers was jointly charged with his codefendant on one count of assault, whereas the codefendant was additionally charged with three separate assaults. (*Id.,* at pp. 24-25.) As to these three separate assaults, they were particularly violent and repugnant assaults on elderly persons and there was no evidence of a joint or conspiratorial action, and one codefendant was in no way connected with the other's alleged conduct. (*Id.,* at p. 26.) It was under these factual circumstances that the court condemned guilt by association, concluding that "in the absence of any charge of concerted or conspiratorial action" (*id.,* at p. 29), Chambers had been prejudiced by the court's failure to admonish the jury against allowing vicarious responsibility to attach to Chambers for the separate acts of his codefendant. (*Ibid.*)

The facts in the case at bench are easily distinguished from those in *Chambers*. Here, appellants were engaged in a joint operation, with Wickliffe acting as Mott's agent and assistant in the repossession of the victim's vehicle. In addition, considering the distinct nature of the charges, there seems no likelihood that a finding of guilt of one of the appellants would have influenced the members of the jury in their deliberations as to the other appellant.

■ A trial court is vested with the discretion to grant or deny separate trials for persons jointly accused. (*People* v. *Romo* (1975) 47 Cal.App.3d 976, 985 [121 Cal.Rptr. 684], overruled on other grounds in *People* v. *Bolton* (1979) 23 Cal.3d 208, 213 [152 Cal.Rptr. 141, 589 P.2d 396]; *People* v. *Simms* (1970) 10 Cal.App.3d 299, 307 [89 Cal.Rptr. 1].) The defendant has the burden of showing that the court's refusal to sever constitutes an abuse of discretion. ■ In *People* v. *Massie* (1967) 66 Cal.2d 899 [59 Cal.Rptr. 733, 428 P.2d 869] the California Supreme Court indicated a trial court should consider several criteria in determining whether to grant a severance motion. Such factors are defined as follows: (1) Where there is an extrajudicial statement made by one defendant which incriminates another defendant and which cannot adequately be edited to excise the portions incriminating the latter; (2) where there may be prejudicial association with

codefendants; (3) where there may be likely confusion from evidence on multiple counts; (4) where there may be conflicting defenses; and (5) where there is a possibility that in a separate trial the codefendant may give exonerating testimony. (*Id.,* at pp. 916-917, fns. 18-22; *People* v. *Isenor* (1971) 17 Cal.App.3d 324, 331 [94 Cal.Rptr. 746].) We are only concerned with the second factor here, and as previously stated, we have concluded there is no danger of guilt by association in this case. Furthermore, a requirement of separate trials would subject the victim and all witnesses to the ordeal of two complete trials, with no attendant benefits to either appellant. No abuse of the trial court's discretion has been shown.

Even if the trial court erred in denying the motion for severance, a conviction at a joint trial should not be reversed in the absence of a reasonable probability that appellants would have obtained a more favorable verdict at a separate trial. The question of the erroneous denial of a severance does not rise to jurisdictional magnitude, nor is a right to a separate trial so fundamental that its denial occasions an automatic reversal. (*People* v. *Massie, supra,* 66 Cal.2d at pp. 922-923; *People* v. *Alvarado* (1967) 255 Cal.App.2d 285, 289 [62 Cal.Rptr. 891].)

Appellants have failed to establish that there was a reasonable probability that a more favorable verdict would have resulted if they had been tried separately. It cannot be argued, as Mott attempts to do, that he was unduly prejudiced by Wickliffe's behavior toward the victim, in light of the overwhelming evidence supporting the two Vehicle Code offenses of which Mott was found guilty. Not only did the scientific blood-alcohol tests prove Mott's degree of intoxication, there was further evidence in the form of the police officer's observation that corroborated the conclusion that Mott was intoxicated. Likewise, Wickliffe was not harmed by evidence of Mott's intoxication, given his own testimony that he had four "Jack Daniels over the rocks" plus a beer on the night in question and felt the effects of those drinks. In any event, evidence concerning the conduct of both Mott and Wickliffe would have been admissible in either a joint or separate trial. Hence, even if the trial court erred in denying appellants' motion for severance, the error was harmless. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

III, IV*

. . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 37.

## V

The judgment is affirmed.

White, P. J., and Barry-Deal, J., concurred.