Filed 9/10/21  P. v. Tonga CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B301310 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA094013) |
| v. | |
| CALVIN LEONARD TONGA et al., | |
| Defendants and Appellants. | |

APPEALS from judgments of the Superior Court of Los Angeles County.  Curtis B. Rappe, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant Calvin Leonard Tonga.

Janyce Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant Taniela Fonoifua.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stacy Schwartz and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

After a shooting attack on the Tongan Crips Gang (TCG), TCG members went on a murderous rampage within surrounding rival gang territories. For their crimes, defendants and appellants Calvin Leonard Tonga (Tonga) and Taniela Fonoifua (Fonoifua) were charged and tried together by jury.[1]

———————————————

[1]     Codefendants Fonuamana Ofeina Fuahala (Fuahala), Lebanon Fifita (Fifita), Samisoni Ilifeleti Lauaki (Lauaki), and Otoniel Ventura-Leon (Ventura-Leon) were also charged and tried with appellants. In the third amended information, Fifita, Lauaki, Ventura-Leon, Fuahala, and Tonga were charged with conspiracy to commit murder (count 1); Fonoifua was charged with the murder of Sheila Renee Gomez (Gomez; count 2) and the attempted murder of Henry Godines (Godines; count 3); Lauaki and Fonoifua were charged with the murder of Aldalberto Salcedo III (Salcedo; count 4); Fifita, Lauaki, Ventura-Leon, Fuahala, and Tonga were charged with the attempted murder of Sabrina Young (Young; count 5) and the murder of Kenneth Campos (Campos; count 6); Fonoifua was charged with the attempted murder of Hernesto Ruiz (Ruiz; count 7); Fifita was charged with possession of a firearm by a felon (count 8); Fonoifua was charged with possession of a firearm by a felon (count 9); and Fifita, Lauaki, Ventura-Leon, Fuahala, and Tonga were charged with the attempted murder of Harry Coburn (Coburn; count 10). (*People v. Fifita* (July 28, 2020, B294952

2

The jury found Tonga guilty of: (1) conspiracy to commit murder (Pen. Code, § 187, subd. (a); count 1),[2] (2) the attempted willful, deliberate, and premeditated murder of Young (§ 664, 187; count 5), (3) the first degree murder of Campos (§ 187, subd. (a); count 6), and (4) the attempted willful, deliberate, and premediated murder of Coburn (§§ 667, 187, subd. (a); count 10).

Fonoifua was found guilty of the first degree murder of Gomez (§ 187, subd. (a); count 2), the attempted murder of Godines (§§ 667, 187, subd. (a); count 3), the first degree murder of Salcedo (§ 187, subd. (a); count 4), the attempted murder of Ruiz (§§ 667, 187, subd. (a); count 7), and possession of a firearm by felon (§ 29800, subd. (a)(1); count 9).[3]

Appellants timely appealed the judgments of conviction.

---

[nonpub. opn.], at p. 2, petitions for review denied Sept. 30, 2020, S264050 (*Fifita*).)

[2]    All further statutory references are to the Penal Code unless otherwise indicated.

[3]    As summarized in *Fifita*, *supra*, B294952, at page 3, Ventura-Leon, Lauaki, and Fifita were convicted of multiple charges, including conspiracy to commit murder and charges relating to the murders and attempted murders. Fifita, Lauaki, and Ventura-Leon separately appealed their judgments of conviction. Other than striking a gang enhancement left unimposed against Fifita in connection with one of his sentences, we affirmed the judgments. (*Id*. at p. 4.) Fuahala was found guilty of counts 1, 5, 6, and 10. (*Id*. at p. 4, fn. 3.) His separate appeal is pending (B306812).

3

# FACTUAL BACKGROUND

## I. *Prosecution's Evidence*

A lengthy and detailed summary of the People's case is set forth in *Fifita*, *supra*, B294952, at pages 4 through 27.

## II. *Defense Evidence*

As set forth in *Fifita*, *supra*, B294952, at page 27, Fonoifua testified in his defense.

Tonga did not offer any evidence in defense.

# DISCUSSION

## I. *Tonga's* <u>*Batson/Wheeler*</u>[4] *Objections*

Just as Fifita, Ventura-Leon, and Lauaki did in their prior appeal (*Fifita*, *supra*, B294952, at p. 29), Tonga contends that the trial court erred in denying the defense's *Batson/Wheeler* objections to the People's peremptory challenge to two African-American female prospective jurors. Fonoifua joins in this argument, specifically addressing it in his reply brief.

### A. <u>Relevant proceedings</u>

Because Tonga and Fonoifua raise the identical objection summarized and addressed in *Fifita*, *supra*, B294952, at pages 29 through 35, we do not repeat our summary of the relevant proceedings.

### B. <u>Forfeiture</u>

The People argue that Tonga forfeited a *Batson/Wheeler* challenge as to one of the prospective jurors because he did not

---

[4]     *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

raise it below.[5]  Given that (1) he admittedly made a proper objection concerning the other prospective juror, and (2) we are addressing the same argument raised by Fonoifua, we address Tonga's arguments in conjunction with those raised by Fonoifua.

C.  Relevant law

Both the state and federal Constitutions prohibit the use of peremptory challenges to remove prospective jurors based solely on group bias, such as race, gender, or ethnicity.  (*Batson*, *supra*, 476 U.S. at p. 89; *People v. O'Malley* (2016) 62 Cal.4th 944, 974; *Wheeler*, *supra*, 22 Cal.3d at pp. 276–277.)  It is presumed that the prosecutor exercised peremptory challenges in a constitutional manner, and the appellant bears the burden of rebutting that presumption.  (*People v. Johnson* (2015) 61 Cal.4th 734, 755; *People v. Manibusan* (2013) 58 Cal.4th 40, 76.)

In determining whether the presumption of constitutionality is overcome, the trial court applies the well-established three-step inquiry set forth in *Batson*.  (*People v. Taylor* (2009) 47 Cal.4th 850, 885.)  "'First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge based on race.  Second, if the showing is made, the burden shifts to the prosecutor to demonstrate that the challenges [were] exercised for a race-neutral reason.  Third, the court determines whether the defendant has proven purposeful discrimination.

---

[5]      In a supplemental letter brief filed on January 28, 2021, Fonoifua argues that his *Batson/Wheeler* challenge was not forfeited.  The People do not argue that Fonoifua forfeited this objection.

The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. [Citation.]  The three-step procedure also applies to state constitutional claims.  [Citations.]'" (*People v. Taylor*, *supra*, at pp. 885–886; see also *People v. Thomas* (2011) 51 Cal.4th 449, 473.)

"At the third stage of the *Wheeler/Batson* inquiry, 'the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible.  Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.'  [Citation.]  In assessing credibility, the court draws upon its contemporaneous observations of the voir dire.  It may also rely on the court's own experiences as a lawyer and bench officer in the community, and even the common practices of the advocate and the office that employs him or her.  [Citation.]" (*People v. Lenix* (2008) 44 Cal.4th 602, 613.)  The proper focus is on the subjective genuineness of the nondiscriminatory justifications given, not on their objective reasonableness. (*People v. Reynoso* (2003) 31 Cal.4th 903, 924.)  A "'legitimate reason[]'" for excusing a prospective juror is not a reason that makes perfect sense, but one that is nondiscriminatory. (*Id*. at p. 916.)

"Review of a trial court's denial of a *Wheeler/Batson* motion is deferential, examining only whether substantial evidence supports its conclusions.  [Citation.]  'We review a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges "'with great

6

restraint.'" [Citation.] We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses. [Citation.] So long as the trial court makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal. [Citation.]' [Citation.]" (*People v. Lenix, supra*, 44 Cal.4th at pp. 613–614.)

D. <u>Analysis</u>

1. *No step one prima facie showing*

For the same reasons set forth in *Fifita, supra*, B294952, at pages 38 through 40, we conclude that Tonga and Fonoifua's claim fails at the outset because the defense failed to make a step one prima facie showing at trial that the prosecutor excused the two prospective jurors based on group bias. (*People v. Scott* (2015) 61 Cal.4th 363, 391 [where trial court determined no prima facie case of discrimination but allowed the prosecutor to state reasons for the challenges and thereafter accepted the reasons as genuine, "an appellate court should begin its analysis of the trial court's denial of the *Batson/Wheeler* motion with a review of the first-stage ruling"].) The trial court here made an express finding after each *Batson/Wheeler* motion was made that each appellant failed to establish a prima facie case of discrimination. The trial court's express finding of no prima facie case is supported by substantial evidence.

And, like Fifita, Lauaki, and Ventura-Leon, appellants here have not sustained their burden of showing a prima facie case of discrimination. (*People v. Scott, supra*, 61 Cal.4th at p. 384.) They failed to demonstrate on the record how many African-

7

American prospective jurors remained on the panel at all times and how many African-American prospective jurors remained in the jury pool. (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1105, fn. 3 ["the defendant carries the sole burden to establish an inference of discrimination"], overruled in part on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) Moreover, the prosecutor's voir dire of the excused prospective jurors was thorough and appropriate, as previously set forth. Furthermore, Tonga and Fonoifua did not belong in the identified minority groups (African-American and females) subject to the alleged discrimination. Nor was there any showing that the victims in this case were members of a group to which the majority of the jury belonged. Because defense counsel failed to make a step one prima facie showing of group bias, each *Batson/Wheeler* motion was properly denied.

2. *Prosecutor provided race-neutral reasons*

In addition, as summarized in *Fifita, supra*, B294952, at pages 40 through 44, the trial court properly denied the *Batson/Wheeler* motions because the prosecutor provided inherently plausible, race-neutral reasons for exercising the peremptory challenges, and those reasons are amply supported by the record. While appellants may disagree with some of those reasons, they have not shown that these reasons were inherently implausible or contradicted by the record. (*People v. Lenix, supra,* 44 Cal.4th at p. 613; *People v. Reynoso, supra,* 31 Cal.4th at p. 924.)

II. *Conspiracy Instruction Cross-referencing the Murder Instruction*

Tonga contends that the instructions on murder and conspiracy to commit murder were inconsistent and likely confused the jury on the necessary mental state for conspiracy. Specifically, he claims that by cross-referencing the instruction on murder, the conspiracy instruction essentially allowed the jury to erroneously consider implied malice murder as a basis for the alleged conspiracy to commit murder. Fonoifua joins in this argument (although he was not convicted of conspiracy to commit murder).

We addressed this identical issue in *Fifita*, *supra*, B294952, at pages 80 through 84. Because Tonga offers nothing new, we reach the same conclusion. Assuming without deciding that the trial court erred, any such error was harmless.

The cross-reference to the murder instructions was made in the given instruction on conspiracy to commit murder (CALCRIM No. 563). It appears that the murder instructions were not modified to delete references to implied malice as they relate to the charge of conspiracy as suggested by the bench notes. It is also arguable whether the instructions as given conformed to our Supreme Court's recent suggestion in *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 642 that it be made clear that "what is required is a conspiracy to commit first degree murder."

Even assuming there was error, it was harmless. (*Chapman v. California* (1967) 386 U.S. 18, 24.) The question presented is whether it can be "determined beyond a reasonable doubt that the erroneous implied malice murder instructions . . . contribute[d] to the conviction[] on the conspiracy count[]."

9

(*People v. Swain* (1996) 12 Cal.4th 593, 607.)  It did not.  The jury found Tonga guilty of first degree murder with premeditation and deliberation being the only theory presented to the jury.  Under the trial court's instructions, such a verdict entailed a finding that each defendant acted "*willfully*," i.e., that he "intended to kill."  As such, there is no "reasonable possibility" that the jury convicted Tonga of conspiracy to commit murder without first finding an intent to kill.  It follows that any instructional error was harmless beyond a reasonable doubt.

III. *Tonga's 15 Years to Life Base Terms Must be Modified to Seven Years to Life Base Terms*

On counts 5 and 10, the jury found true the allegations that (1) the offenses were committed for the benefit of a criminal street gang, and (2) that "a principal personally and intentionally discharged a firearm."  It did not find that Tonga personally discharged a firearm.  The trial court sentenced him to consecutive life terms with a minimum of 15 years (§ 186.22) plus 25 years to life for the gun enhancement (§ 12022.53).

Tonga contends that because the jury did not find that he discharged a firearm, the gang enhancement on these same counts (§ 186.22, subd. (b)(4)) requiring a minimum parole eligibility of 15 years in prison, cannot take effect if the trial court imposed the 25-year minimum parole eligibility for the firearm enhancement (§ 12022.53).  In other words, Tonga asserts that he is not subject to both enhancements.  The People agree.

We agree with the parties.  "Section 12022.53's sentencing scheme distinguishes between four types of offenders.  The first group consists of those offenders who personally used or

discharged a firearm in committing a gang-related offense that is specified in section 12022.53. These defendants are subject to *both* to the harsh enhancement provisions of 12022.53 *and* the gang-related sentence increases of section 186.22. The second group consists of *accomplices* to a gang-related offense specified in section 12022.53 in which, as here, not the defendant but another principal personally used or discharged a firearm. They are subject to additional punishment under *either* section 12022.53 *or* the gang-related sentence increases under section 186.22, but not *both*." (*People v. Brookfield* (2009) 47 Cal.4th 583, 593–594.)

In other words, absent a determination that the accused is subject to the enhanced sentencing provisions of section 186.22 or some other provision of law, a sentence for willful, deliberate, and premeditated murder is for a life term with a minimum wait for parole of seven years. (§ 3046, subd. (a)(1).) If a finding pursuant to section 186.22, subdivision (b)(5), is returned, the minimum wait for parole eligibility under a life sentence is increased to 15 years. (*People v. Salas* (2001) 89 Cal.App.4th 1275, 1280–1281.) But, if a defendant is "never found to have *personally* used a firearm, the section 186.22, subdivision (b)(5) 15-year minimum parole eligibility term is inapplicable." (*People v. Salas*, *supra*, at p. 1281.)

Here, the jury did not find that Tonga personally discharged a firearm. Thus, we direct the trial court to modify the 15-year-to-life minimum parole eligibility to reflect the default minimum parole eligibility of seven years designated for life terms under section 3046, subdivision (a)(1). (*People v. Salas*, *supra*, 89 Cal.App.4th at p. 1283.)

11

IV. *Sufficient Evidence to Support the Gang Enhancement as to Fonoifua for Counts 2, 3, and 4*

Fonoifua contends that there was insufficient evidence to show the requisite intent to establish the gang enhancement on counts 2, 3, and 4.

A. Standard of review

To assess a claim of insufficient evidence, "'we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]'" (*People v. Manibusan, supra,* 58 Cal.4th at p. 87.)

"'In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]"'" (*People v. Manibusan, supra,* 58 Cal.4th at p. 87.)  We do not resolve credibility issues or evidentiary conflicts, but instead look for substantial evidence.  (*Ibid.*)

Reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the verdict.  (*People v. Bolin*

12

(1998) 18 Cal.4th 297, 331; accord, *People v. Manibusan, supra,* 58 Cal.4th at p. 87.)

These same standards apply when a conviction is based primarily on circumstantial evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; *People v. Valdez* (2004) 32 Cal.4th 73, 104.) And intent is often inferred from the circumstances. (*People v. Rios* (2013) 222 Cal.App.4th 542, 567–568; *People v. Ewing* (2016) 244 Cal.App.4th 359, 379.)

B. <u>Relevant law</u>

Pursuant to section 186.22, subdivision (b)(1), the People were required to prove that the underlying felony was "gang related," namely committed 'for the benefit of, at the direction of, or in association with any criminal street gang." The People were also required to prove "that a defendant commit[ted] the gang-related felony 'with the specific intent to promote, further, or assist in any criminal conduct by gang members.'" (§ 186.22, subd. (b)(1); see also *People v. Albillar* (2010) 51 Cal.4th 47, 64–65.)

"[F]acts concerning particular events and participants alleged to have been involved in predicate offenses . . . constitute case-specific facts that must be proved by independently admissible evidence." (*People v. Valencia* (2021) 11 Cal.5th 818, 839.) But, "[a] gang expert may still render an opinion regarding the gang membership of the perpetrator of a predicate offense in response to a proper hypothetical question based on premises established by competent evidence. [Citation.]" (*People v. Valencia*, at p. 839.) In other words, "[i]n order to prove the elements of the criminal street gang enhancement, the prosecution may, as in this case, present expert testimony on

13

criminal street gangs." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1047–1048.) "'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support [a] gang enhancement." (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.)

C. <u>Analysis</u>

Applying these legal principles, we readily conclude that there was ample evidence to support the gang enhancement. These crimes were committed in retaliation for the shootings against Fonoifua and Fuahala. And, as we noted in *Fifita, supra*, B294952, at page 52, in none of the shootings did Fonoifua act alone. Further gang evidence between Fonoifua and the other defendants was the evidence of Ventura-Leon's gestures to Fonoifua instructing him not to talk while at the jail cell. (*Id.* at p. 52.)

Finally, as the gang expert testified, by committing (1) the shooting at Lennox Park (rival gang territory), (2) the shooting of Salcedo, and (3) the shooting of Ruiz while yelling "'"Tongan Gang Crip, man,"'" Fonoifua and the other defendants intended to further and assist the TCG gang by instilling fear and respect for the TCG gang in the community and amongst rival gangs. (*Fifita, supra*, B294952, at pp. 14, 24–27.)

V. *Denial of Fonoifua's Motion to Sever*

Fonoifua argues that the trial court erred in denying his motion to sever counts 2, 3, 4, 7, and 9 from the rest of the charges.

A. <u>Relevant proceedings</u>

"On April 5, 2018, Fonoifua filed a motion for severance of all the charges pertaining to him from the other charges. He

argued that the only count he shared with another defendant was count 4, in which the evidence against Lauaki was weak. He asserted that the evidence would show all six defendants were TCG members and to try all the counts together 'would make it more [believable] that he participated in the ones he is actually charged with.'

"At the time the motion was filed, the second amended information had yet to be filed. In the original information, Fonoifua was charged with six counts, i.e., counts 1, 2, 3, 4, 7, and 9. In the second and third amended informations,[6] Fonoifua was charged with five counts, being left off of count 1. Fonoifua was the only defendant named in counts 2, 3, 7, and 9. He shared the charge in count 4 with Lauaki.

"On July 6, 2018, the motion was heard. None of the other defendants joined. Fonoifua's counsel argued that as to the count that he shared with Lauaki, there was weak evidence against Lauaki. Counsel also argued that being tried with the rest of the defendants would link him, by virtue of their membership in the same gang, with murders that he 'ha[d] nothing to do with.' The prosecutor noted that the evidence of guilt as to all the defendants was intertwined. The murders occurred within the short span of time, i.e., between October 2015 and January of 2016. And, Fonoifua was implicated in the murders during Ventura-Leon's phone conversation.

"Moreover, in the Lennox Park murder for which Fonoifua was charged, Fuahala was identified as a cosuspect in that case. This showed a common link between Fonoifua and the coconspirators. The prosecutor further noted Lauaki was charged

---

[6]    The first amended information was lodged but not filed.

in count 4 as was Fonoifua.  The prosecutor argued that the cell phone records show that Lauaki was with Fonoifua from the morning hours all the way through nighttime, although his phone was turned off during the Salcedo murder.  The prosecutor asserted that there was cross-admissible evidence that was not inflammatory.  The crimes charged were murder and so no one crime was more inflammatory than another.  The prosecutor noted no *Aranda/Bruton*[7] problems.  The prosecutor concluded that it was in the interest of justice and time for there to be a joint trial and Fonoifua would not be prejudiced.

"The trial court denied the motion."  (*Fifita, supra,* B294952, at pp. 47–48.)

B.  Legal principles

"Section 1098 expresses a legislative preference for joint trials."  (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 40.) The statute provides:  "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order[s] separate trials.  In ordering separate trials, the court in its discretion may order a separate trial as to one or more defendants, and a joint trial as to the others, or may order any number of the defendants

---

**7**      *People v. Aranda* (1965) 63 Cal.2d 518; *Bruton v. United States* (1968) 391 U.S. 123.  "Under the so-called *Aranda/Bruton* doctrine, a trial court may generally not allow a jury in a joint criminal trial of a defendant and codefendant to hear the unredacted confession of the codefendant that also directly implicates the defendant—even if the jury is instructed not to consider the confession as evidence against the defendant." (*People v. Washington* (2017) 15 Cal.App.5th 19, 22–23.)

16

to be tried at one trial, and any number of the others at different trials, or may order a separate trial for each defendant; provided, that where two or more persons can be jointly tried, the fact that separate accusatory pleadings were filed shall not prevent their joint trial." (§ 1098; see also § 954 [setting forth the procedures governing charging more than one count or offense].)

Generally, four factors are considered when determining whether the trial court abused its discretion in denying a motion for severance: "'(1) whether evidence of the crimes to be jointly tried is cross-admissible; (2) whether some charges are unusually likely to inflame the jury against the defendant; (3) whether a weak case has been joined with a stronger case so that the spillover effect of aggregate evidence might alter the outcome of some or all of the charges; and (4) whether any charge carries the death penalty or the joinder of charges converts the matter into a capital case.' [Citation.] 'We then balance the potential for prejudice to the defendant from a joint trial against the countervailing benefits to the state.' [Citation.] However, '[i]f the evidence underlying the joined charges would have been cross-admissible at hypothetical separate trials, "that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges." [Citations.]' [Citation.]" (*People v. Westerfield* (2019) 6 Cal.5th 632, 689.)

A denial of a severance motion is reviewed "for abuse of discretion, based on the facts as they appeared at the time of the court's ruling." (*People v. Winbush* (2017) 2 Cal.5th 402, 456.) "'[R]eversal is required only if it is reasonably probable the defendant would have obtained a more favorable result at a

17

separate trial.' [Citations.]" (*People v. Souza* (2012) 54 Cal.4th 90, 109.) "'If the court's joinder ruling was proper when it was made, however, we may reverse a judgment only on a showing that joinder "'resulted in "gross unfairness" amounting to a denial of due process.'"' [Citations.]" (*Ibid.*)

C. <u>Analysis</u>

Applying these legal principles, and as we previously held in *Fifita, supra*, B294952, at page 51, the trial court's ruling was proper at the time it was made.

1. *Cross-admissible evidence*

There was ample cross-admissible evidence given that (1) Lauaki and Fonoifua were jointly charged for Salcedo's murder, and (2) Ventura-Leon's and Fonoifua's phones were in the area of the shooting of Ruiz. Moreover, at the time the motion to sever was brought, which is the operative time for the current analysis, Fonoifua was still charged in count 1 with conspiracy to commit murder along with the other defendants, effectively linking Fonoifua to all the crimes charged in this case. Indeed, at the time the severance motion was argued, the conspiracy charge against Fonoifua was a big part of the prosecutor's argument against severance. (See *People v. Hardy* (1992) 2 Cal.4th 86, 170 [conspiracy charge provides basis for cross-admissibility of evidence]; *People v. Vega-Robles* (2017) 9 Cal.App.5th 382, 432 [same], overruled in part on other grounds in *People v. Valencia, supra*, 11 Cal.5th at p. 839, fn. 17.)

Significantly, despite the eventual deletion of count 1 as to Fonoifua, the prosecution's theory remained unchanged at trial that all of the defendants, including Fonoifua, were TCG members hunting victims pursuant to a "'pack mentality.'"

18

(*Fifita, supra*, B294952, at p. 52.) The precipitating event for this crime spree was apparently a four-month old incident during which Fonoifua himself, as well as Fuahala, suffered multiple gunshot wounds from an attack by rival gang members. Fonoifua's charged crimes, therefore, were part of a whole series of collaborative gang-style assaults by TCG members against their rivals.

And, as we noted in *Fifita, supra*, B294952, at page 52, in none of the shootings did Fonoifua act alone. It was only due to prosecutorial discretion that no other defendants were charged in counts 2, 3, and 7.

Furthermore, as set forth above, the evidence of Ventura-Leon's gestures to Fonoifua in a jail cell demonstrated the existence of an uncharged gang conspiracy between Fonoifua and the rest of the defendants. (*Fifita, supra*, B294952, at pp. 18, 52.)

Given that Fonoifua's crimes were part and parcel of this concerted four-month crime-spree by TCG members in retaliation for a gang-style assault on Fonoifua and Fuahala, much, if not all, of the evidence relating to Fonoifua's charged crimes was cross-admissible as to the other defendants, including as motive evidence as well as evidence of a common plan. To join Fonoifua to the rest of the defendants in this case was not only warranted, but the most natural and compelling way to view the set of crimes charged in this case.

2. *Unlikely to inflame the jury*

All of the charges that mattered in this case, attempted murder and murder, were equally serious and equally appalling. As such, no single one of these charges serves to inflame another.

19

### 3. *Weak case not joined with strong case*

Moreover, this was not a situation where a weak case was joined to a stronger case. The case against Fonoifua was strong. He and his codefendants were all close-knit members of the TCG. (*Fifita*, *supra*, B294952, at p. 62.) As set forth in *Fifita*, *supra*, at page 63, months after Fuahala and Fonoifua were shot and injured by rival gang members, Fonoifua, along with individuals that came in two cars, including an SUV-type truck that fit the description of Ventura-Leon's car, committed the brutal killing of Gomez and the attempted murder of Godines. Eleven days later, Fonoifua and another TCG member ambushed and killed a rival gang member, Salcedo.

### 4. *Not a capital case*

Finally, this case was not charged as a capital case.

### 5. *Trial court properly denied Fonoifua's severance motion*

Because the factors favor joinder in this case, the trial court did not abuse its discretion in denying Fonoifua's severance motion. Nor is there any reasonable probability Fonoifua would have obtained a more favorable result at a separate trial. (*People v. Ortiz* (1978) 22 Cal.3d 38, 46.)

**DISPOSITION**

That portion of the judgment against Tonga that imposes a 15-year minimum parole eligibility date pursuant to section 186.22, subdivision (b)(5), is reversed.  The judgment against Tonga is to be modified to reflect that Tonga is subject to a seven-year minimum parole eligibility date pursuant to section 3046, subdivision (a)(1).  In all other respects, the judgments are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT


21