Filed 7/3/25  P. v. Oicles CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER TODD OICLES,<br><br>    Defendant and Appellant. | H051339<br>(Santa Clara County<br>  Super. Ct. No. B1795099) |

Christopher Todd Oicles appeals from his convictions for stalking, criminal threats, several drug offenses, and unlawful weapons possession.  Oicles's sole argument on appeal is that the drug and weapons charges against him were improperly joined with the stalking and criminal threats charges.  Because Oicles has not shown that joinder of these charges caused a miscarriage of justice, we affirm.

## I.  BACKGROUND

The facts recounted below are drawn from the record, including the evidence presented at trial, which is viewed in the light most favorable to the verdict.  (See *People v. Banks* (2015) 61 Cal.4th 788, 795.)

In November 2017, Oicles was charged with six offenses.  The first charge was stalking S.D., a colleague from work, between March 2017 and November 2017.  (To protect the privacy of the victim, we use initials to refer to her.  (Cal. Rules of Court,

rule 8.90(b)(4).)  Oicles also was charged with making a criminal threat against S.D. on or about November 22, 2017.  Finally, Oicles was charged with unlawful possession of a controlled substances while armed, manufacturing a controlled substance, and two counts of possession of an assault weapon.

Before trial, Oicles moved to sever the drug and weapons charges from the stalking and criminal threats charges.  After a hearing, the trial court denied the motion.  Observing that the police discovered the evidence underlying the drug and weapons charges in serving a protective order on Mr. Oicles related to the stalking and criminal threat charges, the trial court reasoned that all the charges against Oicles in the second trial were "part of a continuous course of investigation."  The court also found the danger of prejudice outweighed by the benefits of joinder because the drug and weapons charges were unlikely to unusually inflame the jury against Oicles and the stalking and criminal threats charges were well supported.

At trial S.D. testified that she worked at Advanced Micro Devices (AMD) where Oicles, whom she had met through her ex-husband, also worked.  Beginning in January 2017, S.D. started encountering Oicles when she took smoking breaks outside and had friendly conversations with him.  In February or March 2017, after Oicles told her that he had been ill and had no one to help him, S.D. gave Oicles her phone number.

A month or two later, Oicles texted S.D. from a bathroom at AMD that he needed help.  After finding Oicles on the floor surrounded by blood, S.D. told a security guard that Oicles needed help.  Oicles said to the guard that S.D. would take him home, but she refused, and the guard instead called an ambulance which took Oicles to the hospital.

A few hours later, Oicles returned and complained to S.D. about the cost of the ambulance.  Around the same time, Oicles texted S.D. that he was "very in love" with her.  When S.D. told Oicles that she did not share his feelings, things turned "very bad."  Oicles said he would put his hand inside her vagina and gestured obscenely.  S.D. was shocked, and the next day she told Oicles that what he had said was hurtful and

2

inappropriate. Oicles became angry and said that he would "put a bullet" in his head if she went to the police.

S.D. decided to stop interacting with Oicles, going to a different smoking area, blocking his phone number, and changing her own number.

However, Oicles was able to continue contacting S.D. by using an IP address tracing service to find her new number and an online phone service to shield his own. S.D. found some messages Oicles sent her "completely insane." In addition, one time when she happened to walk past Oicles, he got up, stood "extremely close" to her, and said, "I want to fuck you now, fuck you now. Get in the car now. Get in the car. Get in the car." S.D. was "[e]xtremely scared" and "terrorized." Afterwards, Oicles texted S.D. and apologized for the "kidnap attempt." Oicles also told S.D. that he had firearms and knew a sniper who could "take care of" S.D.'s ex-husband.

On November 20, 2017, S.D. found an unstamped letter from Oicles in the doorway of her home, even though she had never told him where she lived. In addition to containing "pages of nonsense," the letter falsely claimed that S.D.'s ex-husband was controlling her and that she was having an affair with her manager. Two days later, S.D. found a second letter from Oicles in her doorway. In this letter, Oicles said that he "cannot be stopped" and had "blanche cart [sic] to do anything to wreck" S.D. and her ex-husband. Although she had not wanted to get Oicles in trouble, S.D. decided to contact the police.

After S.D.'s testimony, a police officer testified that on November 22, 2017 Oicles was arrested, and methamphetamine capsules were found nearby. Another officer testified that he searched Oicles' car and discovered a loaded gun in the center console as well as AR-15 magazines and another loaded handgun in the trunk.

In addition, once S.D. obtained an emergency protective order against Oicles, officers went to his home to retrieve four firearms registered to him. There, officers

3

found a total of nine firearms as well as laboratory equipment and other materials consistent with a makeshift methamphetamine manufacturing lab.

The defense rested without calling witnesses, and the jury convicted Oicles on all charges.

On August 14, 2023, in a joint sentencing with another case, the trial court sentenced Oicles to a total of five years consecutive to the sentence in that case.

Oicles filed a timely notice of appeal.

## II. DISCUSSION

On appeal, Oicles challenges his convictions based on the denial of his motion to sever the stalking and criminal threats charges against him from the drug and weapons charges. As explained below, we conclude that any error in joining these charges did not create a miscarriage of justice.

California has "a policy of promoting judicial economy through the joinder of appropriately related offenses, subject to severance as necessary to protect the interests of the defendant." (*People v. Henson* (2022) 13 Cal.5th 574, 590; see also *People v. Bean* (1988) 46 Cal.3d 919, 939-940 [discussing the benefits to the state of joinder]; *People v. Ochoa* (1998) 19 Cal.4th 353, 409 [noting that joinder of related charges " 'ordinarily avoids needless harassment of the defendant' "].) Accordingly, section 954 permits joinder of two or more different offenses if those offenses are "of the same class of crimes or offense" or "connected together in their commission." (§ 954 ["An accusatory pleading may charge two or more different offense connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses."].) Moreover, in light of the policy favoring joinder of appropriately related offenses, denial of a motion to sever is reviewed for abuse of discretion. (*People v. Westerfield* (2019) 615 Cal.5th 632, 689.)

We need not determine whether the stalking and criminal threats charges against Oicles were properly joined with the drug and weapons charges against him because,

4

even if they were not, there was no miscarriage of justice. As Oicles acknowledges, when charges are improperly joined, a defendant is not entitled to reversal unless misjoinder caused a miscarriage of justice. (See Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . for any error as to any matter of procedure, unless, after examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."].) Oicles contends that, in determining whether there was a miscarriage of justice, we should apply the federal harmless error standard and find a miscarriage of justice unless misjoinder was harmless beyond a reasonable doubt. However, in dealing with misjoinder of parties, the California Supreme Court has applied the state's harmless error standard in *People v. Watson* (1956) 46 Cal.2d 818, 836 and examined whether it is "reasonably probable" that the defendant "would have obtained a more favorable verdict at a separate trial." (*People v. Massie* (1967) 66 Cal.2d 923-924; see also *People v. Ortiz* (1978) 22 Cal.3d 38, 46.) Misjoinder of charges no more raises federal constitutional issues than misjoinder of parties. Consequently, we apply the *Watson* test here and examine whether there is reasonable probability that Oicles would have obtained a more favorable verdict had the drug and weapons charges not been joined with the stalking and criminal threats charges.

We conclude there is no reasonable probability of a more favorable verdict. The evidence on the stalking and criminal threats charges was strong. S.D. testified that Oicles' offensive behavior began in April 2017 when Oicles made graphic and shocking comments to her and reacted angrily when she objected to the comments. Despite S.D.'s attempts to avoid him as well as blocking his phone number and changing hers, Oicles continued to text her, apparently using online services to trace her new number and mask his own. In addition, several weeks after the first incident, Oicles approached S.D. and, "towering over" her, said "I want to fuck you now" and "get in the car." Later, Oicles told S.D. that he had firearms. And in November 2017 he left two letters in S.D.'s doorway, even though she had never told him her address. The first letter accused S.D.

5

of working with her ex-husband and having an affair with a third man.  In the second letter, Oicles told S.D. he had "blanche cart [sic] to wreck me" and "to wreck my husband."  Scared that Oicles would physically harm her or her ex-husband, Oicles warned her ex-husband about the threat and went to the police

S.D.'s testimony was supported by copies of the November letters as well as emails and texts—including one in April or May 2017 in which Oicles apologized for "the attempted kidnap."  In addition, because Oicles chose not to present any evidence in his defense, S.D.'s testimony and the documentary evidence supporting it was essentially uncontroverted.  Thus, there was strong evidence that Oicles engaged in stalking and made criminal threats.

Oicles nevertheless contends that, absent joinder of the drug and weapons charges, there is a substantial probability the jury would have acquitted him of the stalking and criminal threats charges because it might have been persuaded that his threats were the mere "outlandish rantings of a person with a severe mental condition."  It is true that the stalking and the criminal threats charges against Oicles both require a threat that created a reasonably sustained fear.  (Penal Code, § 422, subd. (a) [requiring a threat that causes the victim "reasonably to be in sustained fear" for the victim's or an immediate family's safety]; *id*., § 646.9, subd. (a) [requiring a credible threat intended to put the victim "in reasonable fear" for the safety of the victim or immediate family].)  In addition, S.D. testified that Oicles' text messages were "completely insane" and the first letter left in her doorway contained "pages of nonsense."

However, Oicles has failed to show how joinder of the drug and weapons charges significantly impeded his ability to argue that the stalking and criminal threats charges were based on the innocuous and outlandish rantings of a mentally ill person.  Oicles contends that the evidence concerning the drug and weapons charges showed an "unequivocal and ongoing threat to S.D.'s safety by one with immediate access to a cache of lethal weapons and a patent disregard for the safety of others," thereby preventing him

6

from arguing plausibly that his statements were outlandish rantings. However, when Oicles was arrested, the police searched his car and found small arsenal: a Heckler & Koch .45-caliber pistol loaded with eight rounds, a Smith & Wesson .40-caliber ammunition magazine loaded with 10 round, five 30-round .223-caliber rifle magazines, and five 20-round .223-caliber rifle magazines. Moreover, Oicles has acknowledged that this evidence would have been presented even if the gun and weapons charges had not been joined. But this arsenal undermines Oicles' contention that his threats were mere outlandish rantings in the same way as the larger arsenal in his home: They both show that Oicles had ample means for realizing his threats. In addition, Oicles fails to explain how, in light of the arsenal in his car, either the larger arsenal in his house or the equipment for manufacturing methamphetamines likely swayed the jury.

Consequently, we conclude that there is no reasonable probability that Oicles would have obtained a more favorable verdict on the stalking and criminal threats charges if they had not been joined with the drug and weapons possession charges, and therefore Oicles' objection to joinder of the charges provides no basis for reversing the judgment.

### III. DISPOSITION

The judgment is affirmed.

_____
BROMBERG, J.



WE CONCUR:





_____
GREENWOOD, P. J.




_____
LIE, J.




*People v. Oicles*
H051339